UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONAL SCIENCE FOUNDATION, et al.,<br><br>    Defendants. | Case No. 25-cv-11231 |

**PLAINTIFFS' RENEWED MOTION TO EXPEDITE PRELIMINARY INJUNCTION BRIEFING SCHEDULE AND FOR RELIEF FROM THE COURT'S ELECTRONIC ORDER OF MAY 9, 2025**

  Plaintiffs hereby renew their motion to expedite the briefing schedule for Plaintiffs' Motion for a Preliminary Injunction ("Motion"). ECF No. 40. Given the significance of the issues and the extraordinary nature of the policy being challenged in this case, and to prevent further irreparable harm to Plaintiffs and the important research that has been put at risk by that policy, Plaintiffs respectfully request that the Court expedite the briefing schedule for Plaintiffs' Motion for a Preliminary Injunction. *See* Local Rule 7.1(a)(1) (permitting amendment of deadlines "as required by the progress of the case").

  Specifically, Plaintiffs request that the Court order the following expedited schedule for briefing of Plaintiffs' Motion for a Preliminary Injunction:

- May 16, 2025: Defendants' Response to Plaintiffs' Motion for Preliminary Injunction;

- May 20, 2025: Plaintiffs' Reply in Support of their Motion for Preliminary Injunction;

1

- As soon thereafter as is convenient for the Court: Hearing on Plaintiffs' Motion for Preliminary Injunction.

While Plaintiffs believe that the parties could brief the merits of cross-motions for summary judgment based on this same schedule, and that doing so could be more efficient for the parties and the Court, Plaintiffs via this motion principally seek expedited briefing on their motion for a preliminary injunction given the irreparable harms they face.

In support of their motion, Plaintiffs state as follows:

1. Plaintiffs challenge the policy announced by the U.S. National Science Foundation ("NSF") effective May 5, 2025, to "apply a standard indirect cost rate not to exceed 15% to all grants and cooperative agreements" awarded to Institutions of Higher Education ("IHEs") (the "Rate Cap Policy" or "Policy").

2. The Rate Cap Policy is of extraordinary scope and significance, and it is already causing irreparable harm to Plaintiffs. As set forth more fully in Plaintiff's Motion and accompanying declarations, the Policy jeopardizes hundreds of millions of dollars of federal research funding across hundreds of colleges and universities, which receive the vast majority of NSF's total research and development expenses. *See* ECF No. 41 at 33–41. And every day that the Policy remains in effect, universities are being forced to make decisions about whether to forego accepting new grants at indirect cost rates they cannot sustain, whether to curtail the scope of ongoing research in anticipation of such rates, and whether to implement cost-cutting measures that are near-impossible to reverse—including cuts to staffing and facility expansion and maintenance.

3. Plaintiffs filed their initial motion to expedite the briefing schedule under Local Rule 7.1 and for leave to file excess pages on May 8, 2025, in advance of their Motion for a Preliminary Injunction and for Summary Judgment. ECF No. 38. The Court granted leave to file

excess pages but denied without prejudice their request to expedite the default briefing schedule, stating that Plaintiffs could refile their request after conferring with Defendants. ECF No. 39. In the meantime, the Court ordered that the briefing would follow the default timeline under the Local Rules. *Id.*

4. Plaintiffs have now had an opportunity to confer with the Defendants. While Defendants have said they are amenable to a briefing schedule that proceeds more quickly than the default timeline for summary judgment, they have not agreed to Plaintiffs' proposed schedule for briefing their Motion for a Preliminary Injunction. This expedited schedule continues to be warranted by the irreparable harm Plaintiffs are currently experiencing. Indeed, the discussions between Defendants and Plaintiffs about how NSF is implementing the Rate Cap Policy only underscore the irreparable harms that Plaintiffs face.

5. Specifically, IHEs, including Plaintiffs, are awaiting decisions on countless award proposals currently pending with NSF, and they are also continuing to prepare and submit research proposals, including for renewals of existing grants. All of these proposals and awards are now in jeopardy because the Policy unlawfully sets indirect cost rates for future NSF awards far below the rates that individual IHEs previously negotiated with the Government pursuant to a regulatory scheme required by statute.

6. In conferring with Plaintiffs, Defendants have represented that the NSF construes the Rate Cap Policy as applying to *pending* grant proposals so long as an award is issued after May 5, 2025. Defendants have also represented that NSF will not agree to hold off applying the Policy to such proposals pending the Court's decision or to hold open any awards on pending proposals while litigation is pending—*i.e.*, not to force institutions to either accept the 15% rate or decline the award.

7. Plaintiffs currently have thousands of proposals pending before NSF that were prepared in reliance on their negotiated indirect cost rates—under Notices of Funding Opportunities that predate and made no reference to the new Rate Cap Policy—and most of those projects could not proceed at a 15% rate. *See* ECF No. 41 at 34–35 & nn.10–11. The Policy has thus already put Plaintiffs in an untenable position: Because they cannot accept the 15% rate without committing to a financially unsustainable model, they will need to reject awards for currently pending proposals, all of which were submitted in reliance on their individual, negotiated indirect cost rates. *See id.* Losing the ability to accept these previously submitted NSF research proposals—which is happening *right now*—irreparably harms the missions and research programs of these institutions. That harm will be compounded in the immediate future as institutions' budgets are upended, and as they are forced to make decisions about cutting crucial staff, curtailing maintenance of specialized facilities, shrinking or abandoning research programs, and countless other consequences of the Policy, as detailed in Plaintiffs' Motion.[1] *Id.* at 33–41.

8. These harms will continue for Plaintiffs and hundreds of other schools across the country unless and until the Policy is enjoined. Expediting consideration of Plaintiffs' Motion for a Preliminary Injunction will also provide urgently needed clarity, both for the Government and for the hundreds of institutions affected by the Policy. Accordingly, Plaintiffs urge that the Court order expedited briefing, on Plaintiffs' proposed timeline, of at least Plaintiffs' Motion for a Preliminary Injunction.

9. An accelerated schedule will not prejudice the Government, especially given that this is the second time Plaintiffs have proposed it, and Plaintiffs have conferred at length with the

---

[1] Plaintiffs note that the Government has represented that NSF will not reject outright any new proposals submitted to NSF at negotiated indirect cost rates simply because they do not comply with the Rate Cap Policy, but would instead discuss indirect costs with the IHE.

Defendants in advance of this renewed motion. As noted in Plaintiffs' first motion to expedite the default briefing schedule, the legal issues in this case are substantially similar to those in other cases filed in this District, both of which proceeded on expedited briefing and argument timelines. In both of those cases, Plaintiffs—including some of the same institutions and associations who are Plaintiffs in this matter—sought (and were granted) temporary restraining orders. *See Massachusetts v. Nat'l Insts. of Health* ("*NIH*"), No. 25-cv-10338, __ F. Supp. 3d __, 2025 WL 702163 (D. Mass. Mar. 5, 2025), *final judgment entered*, 2025 WL 1063760 (D. Mass. Apr. 4, 2025), *appeal docketed*, No. 25-1344 (1st Cir. Apr. 9, 2025); *Ass'n of Am. Univs. v. Dep't of Energy* ("*DOE*"), No. 25-cv-10912, 2025 WL 1119791 (D. Mass. Apr. 16, 2025) (granting temporary restraining order). Plaintiffs' proposed schedule would expedite briefing for both parties and would provide briefing timeframes similar to those ordered by the courts in the *NIH* and *DOE* cases.[2]

10. Plaintiffs would not object to briefing their Motion for Summary Judgment, and any cross-motion for summary judgment that Defendants wish to file, on this same briefing schedule, should that prove more efficient for the Court. Counsel for Defendants has represented to Plaintiffs that the Government does not disagree that the merits of this matter can be decided on an expedited basis—just as the court did in the *NIH* case, where the parties stipulated to entry of final judgment based on the preliminary injunction record. *See NIH*, No. 25-cv-10338, 2025 WL 1063760, at *1 (D. Mass. Apr. 4, 2025) (granting motion to convert order granting preliminary injunction into permanent injunction and entering final judgment); *see also* Fed. R.

---

[2] In *NIH*, the Government had three days to file its opposition to Plaintiffs' Motion for a Temporary Restraining Order. In *DOE*, the Government had eight days to file its opposition to Plaintiffs' Motion for a Temporary Restraining Order. Under the proposed schedule here, the Government will have again had eight days to file its opposition to Plaintiffs' Motion for a Preliminary Injunction.

Civ. P. 65(a)(2) (contemplating consolidation of adjudication of a request for a preliminary injunction and of the merits of a matter). Counsel for the Government has represented that, as in the *NIH* case, NSF's Rate Cap Policy Notice forms the entirety of the record NSF will rely upon as the basis for the agency action challenged in this case. As a result, there may be no need for separate briefing of the merits of this matter. That could be accomplished by allowing the Government to file its cross motion for summary judgment (and opposition to Plaintiffs' motion for summary judgment) on May 16, and if the Government desires, a reply in support of its cross motion on May 23, 2025.[3]

11.  However, the Government would like the Court to impose a combined briefing schedule on a slower timeframe—one that would delay relief from the Policy that is currently and continuously causing irreparable harm to Plaintiffs and their members. The parties were unable to arrive at a negotiated solution to mitigate that harm during the pendency of the briefing on the Government's proposed schedule; as a result, Plaintiffs have no option to cure the harm presently wrought by the Rate Cap Policy other than by seeking preliminary injunctive relief as soon as possible.

*    *    *

In addition to their renewed request for an expedited briefing schedule, Plaintiffs request that the Court relieve them of complying with its electronic order of May 9, 2025, which would otherwise require them to file a statement of material facts pursuant to Local Rule 56.1 in support of their motion for summary judgment. If the Court enters a schedule that includes expedited briefing on the motion for summary judgment, prompt guidance on this issue is needed; in all

---

[3] Alternatively, if the Court simply resolves the motion for a preliminary injunction on Plaintiffs' requested schedule, that may ultimately obviate the need to brief motions for summary judgment. As noted, in the *NIH* case, the government and the plaintiffs ultimately stipulated to entry of final judgment based on the preliminary injunction decision.

events, moreover, guidance will be useful to the parties.  In support of that request, Plaintiffs state as follows:

12. Plaintiffs respectfully submit that their Motion for Summary Judgment can be decided without a statement of material facts because this is an administrative law case that can be decided on the administrative record alone.  *See Bos. Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016) (explaining that in the administrative law context, "a motion for summary judgment is simply a vehicle to tee up a case for judicial review and, thus, an inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was arbitrary and capricious"); *Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997) (calling this summary judgment's "special twist in the administrative law context"); *see also, e.g.*, *Sasen v. Spencer*, 879 F.3d 354, 359 n.4 (1st Cir. 2018) (noting that "[t]he traditional summary judgment framework is inapposite" in the administrative law context); *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) ("In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record." (collecting cases)).  "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"  *Sierra Club*, 459 F. Supp. 2d at 90 (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)).  For this reason, courts typically hold that Rule 56(c) does not apply to "claims involving review of a final agency action under the Administrative Procedure Act" and parties are therefore "not required to submit statements of disputed or undisputed

7

material facts." *All. for Nat. Health U.S. v. Sebelius*, 775 F. Supp. 2d 114, 118 (D.D.C. 2011) (citing D.D.C. Local Civil Rule 7(h)(2)).

13. Plaintiffs have conferred with the Government on this issue, and the Government agrees that this case can and should be decided without a Rule 56 statements of material facts, given the nature of the case. Moreover, while APA cases typically involve an administrative record, counsel for the Government has—as noted above—represented that here, NSF's Rate Cap Policy Notice forms the entirety of the administrative record NSF will rely upon as the basis for the agency action challenged in this case.

14. Pursuant to Local Rule 7.1, counsel for Plaintiffs notified and conferred with counsel for Defendants regarding the contents of this Motion, as described herein.

Dated: May 14, 2025

JENNER & BLOCK LLP

By: */s/ Lindsay Harrison*

Lindsay C. Harrison (admitted *pro hac vice*)
Ishan K. Bhabha (admitted *pro hac vice*)
Lauren J. Hartz (admitted *pro hac vice*)
Elizabeth Henthorne (admitted *pro hac vice*)
Anjali Motgi (admitted *pro hac vice*)
Zachary C. Schauf (admitted *pro hac vice*)
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com
IBhabha@jenner.com
LHartz@jenner.com
BHenthorne@jenner.com
AMotgi@jenner.com
ZSchauf@jenner.com

Shoba Pillay, BBO No. 659739
353 N Clark Street

Respectfully submitted,

CLEMENT & MURPHY, PLLC

By: */s/ Paul D. Clement*

Paul D. Clement (admitted *pro hac vice*)
James Y. Xi (admitted *pro hac vice*)
Kyle R. Eiswald (admitted *pro hac vice*)
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com
james.xi@clementmurphy.com
kyle.eiswald@clementmurphy.com

*Attorneys for Association of American Universities, Association of Public and Land-grant Universities, and American Council on Education*

Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com

*Attorneys for All Plaintiffs*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of May, 2025, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

*/s/ Lindsay Harrison*
Lindsay C. Harrison (admitted *pro hac vice*)
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com