**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL SCIENCE FOUNDATION, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-11231 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
ATTORNEYS' FEES AND COSTS PURSUANT TO THE
EQUAL ACCESS TO JUSTICE ACT**

TABLE OF CONTENTS

**PAGE**

FACTUAL BACKGROUND ........................................................................... 1

LEGAL STANDING ................................................................................... 3

ARGUMENT ..................................................................**Error! Bookmark not defined.**

I.    Plaintiffs are entitled to attorneys' fees and costs under the EAJA ................................ 4

    A.    AAU meets EAJA's eligibility requirements to receive attorneys' fees and costs. 4

    B.    AAU is a prevailing party, its petition was timely filed, and no special
          circumstances make an award unjust .................................................................. 4

    C.    The government's position was not substantially justified ................................ 5

II.    The requested amount of attorneys' fees and costs is reasonable. ................................. 8

    A.    The requested rates are reasonable. ................................................................. 8

    B.    The number of hours is reasonable .................................................................. 11

CONCLUSION ....................................................................................... 12

TABLE OF AUTHORITIES

PAGE

**Cases**

*AAU v. DOD*,
No. 25-cv-11740, 2025 WL 2899765 (D. Mass. Oct. 10, 2025) ..........................................8

*AAU v. DOE*,
789 F. Supp. 3d 118 (D. Mass. 2025)...................................................................................7

*AAU v. DOE*,
No. 25-CV-10912, 2025 WL 1119791 (D. Mass. Apr. 16, 2025) ................................1, 2, 7

*AAU v. NSF*,
788 F. Supp. 3d 106 (D. Mass. 2025)........................................................................ passim

*Atl. Fish Spotters Ass'n v. Daley*,
205 F.3d 488 (1st Cir. 2000).............................................................................................10

*Berishev v. Chertoff*,
486 F. Supp. 2d 202 (D. Mass. 2007)..................................................................................5

*Blaney v. Saul*,
No. 18-cv-12009, 2020 WL 6162944 (D. Mass. Oct. 21, 2020) .........................................10

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
532 U.S. 598 (2001).............................................................................................................4

*Cano v. Saul*,
505 F. Supp. 3d 20 (D. Mass. 2020)..................................................................................10

*Castaneda-Castillo v. Holder*,
723 F.3d 48 (1st Cir. 2013) ..............................................................................................4, 9

*Clement v. Saul*,
No. 18-cv-10550, 2020 WL 13558730 (D. Mass. Mar. 26, 2020).......................................9

*Conserva v. Kijakazi*,
No. 22-cv-10205, 2023 WL 8126660 (D. Mass. June 23, 2023)....................................9, 10

*De Allende v. Baker*,
891 F.2d 7 (1st Cir.1989).....................................................................................................8

*Enos v. Saul*,
No. 19-cv-10023, 2020 WL 6082127 (D. Mass. Oct. 15, 2020) ........................................10

*Kiareldeen v. Ashcroft*,
273 F.3d 542 (3d Cir. 2001) ................................................................................................5

*Massachusetts v. NIH*,
    770 F. Supp. 3d 277 (D. Mass. 2025) ..................................................................... 1, 2, 7

*McDonald v. Bowen*,
    693 F. Supp. 1298 (D. Mass. 1988) ............................................................................ 5, 8

*McDonald v. Sec'y of Health & Hum. Servs.*,
    884 F.2d 1468 (1st Cir. 1989) ........................................................................................ 5

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ............................................................................................... 5, 6, 8

*Roe v. Mayorkas*,
    No. 22-CV-10808, 2024 WL 5198705 (D. Mass. Oct. 2, 2024) ................................... 6

*Schock v. United States*,
    254 F.3d 1 (1st Cir. 2001) ...................................................................................... 5, 6, 8

*Smyth v. Kijakazi*,
    No. CV 20-12275, 2021 WL 5771634 (D. Mass. Dec. 6, 2021) ................................. 10

*Tang v. Chertoff*,
    689 F. Supp. 2d 206 (D. Mass. 2010) ........................................................................ 5, 9

**Statutes**

2 C.F.R. § 200.414(c) ....................................................................................................... 6

2 C.F.R. § 200.414(f) ........................................................................................................ 6

28 U.S.C. § 2412 .............................................................................................................. 3

28 U.S.C. § 2412(a)(1) .................................................................................................... 12

28 U.S.C. § 2412(d)(2)(A) ............................................................................................. 4, 8

28 U.S.C. § 2412(d)(2)(A)(ii) .......................................................................................... 8

28 U.S.C. § 2412(d)(1)(B) ............................................................................................... 5

28 U.S.C. § 2412(d)(2)(B) ............................................................................................... 4

28 U.S.C. § 2412(d)(2)(G) ............................................................................................... 5

41 U.S.C. § 4708 ............................................................................................................... 6

42 U.S.C. § 1861 ............................................................................................................... 6

42 U.S.C. § 1862(a)(1) ...................................................................................................... 7

**Other Authorities**

DOE, *Policy Flash 2025-22: Adjusting Department of Energy Grant Policy for Institutions of Higher Education (IHE)* (Apr. 11, 2025), https://www.energy.gov/management/pf-2025-22-pf-2025-22-adjusting-department-energy-grant-policy-institutions-higher .............................................................. 2

Emil Michael, Under Secretary of Defense, *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (June 12, 2025), https://www.cogr.edu/sites/default/files/DoD%20Implementation%20of%20SECDEF%20Indirect%20Cost%20Cap%20Memo%20-%202025-06-12.pdf ................................ 2

Final Judgment, *AAU v. DOE*, 1:25-cv-10912 (D. Mass. June 30, 2025) ................................... 8

Judgment, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025) ............................................ 3, 5

Mandate, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025) ............................................... 3, 5

Mot. Dismiss Appeal, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 26, 2025) ................................. 3

NIH, NOT-OD-25-068, *Supplemental Guidance to the 2024 NIH Grants Policy Statement: Indirect Cost Rates* (Feb. 7, 2025), https://grants.nih.gov/grants/guide/notice-files/NOT-OD-25-068.html ................................ 2

NSF, NSF 25-034, *Policy Notice: Implementation of Standard 15% Indirect Cost Rate* (May 2, 2025), https://www.nsf.gov/policies/document/indirect-cost-rate ............................ 1

Pete Hegseth, Secretary of Defense, *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (May 14, 2025), Implementation of a 15 Percent Indirect Cost Cap on Assistance Awards to Institutions._.pdf ............................................................................................................. 2

U.S. Bureau of Labor Statistics, Databases, Tables & Calculators by Subject, https://data.bls.gov/pdq/SurveyOutputServlet?data_tool=dropmap&series_id=CUURS11ASA0,CUUSS11ASA0 (last visited Oct. 28, 2025) (Boston area CPI-U) ................................................................................................................................. 9

Plaintiff Association of American Universities ("AAU") hereby moves for an award of attorneys' fees and costs in the amount of $330,453.56, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. On May 2, 2025, the National Science Foundation ("NSF") issued a policy purporting to cap at 15% the rates it would reimburse for so-called "indirect costs" associated with its grants to institutions of higher education ("IHEs"). This 15% rate cap idea was not unique to NSF—at the time the NSF policy was issued, courts in this District had enjoined materially identical policies issued by two other federal agencies within the prior two months. *See Massachusetts v. NIH*, 770 F. Supp. 3d 277, 327 (D. Mass. 2025), *judgment entered,* No. 1:25-CV-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025), *appeals docketed*, Nos. 25-1343, 25-1344, 25-1345 (1st Cir. Apr. 9, 2025); *AAU v. DOE*, No. 25-CV-10912, 2025 WL 1119791, at *1 (D. Mass. Apr. 16, 2025). Courts in this District have since vacated or enjoined all four Rate Cap Policies, including NSF's in this case and a later policy issued by the Department of Defense ("DOD"). After Defendants dropped their appeal last month, this case is the first of the four suits to reach an unappealable end. AAU now seeks to recoup some of the cost of challenging a policy that Defendants knew or should have known was unlawful from its inception.

## FACTUAL BACKGROUND

This litigation involved a challenge under the Administrative Procedure Act ("APA") to NSF's Rate Cap Policy, under which the agency imposed a categorical 15% cap on indirect cost rates for all new grants and cooperative agreements issued to IHEs. *See* NSF, NSF 25-034, *Policy Notice: Implementation of Standard 15% Indirect Cost Rate* (May 2, 2025), https://www.nsf.gov/policies/document/indirect-cost-rate. NSF's policy was materially identical to policies issued by the NIH, DOE, and, later, DOD, each of which also set an across-the-board

indirect cost rate of not more than 15% for all university grants.[1]  At the time Defendants enacted the NSF Rate Cap Policy, courts in this District had already vacated and enjoined the NIH policy—including entering a final judgment to that effect on the government's own motion—and restrained DOE from enforcing its policy.  *See NIH*, 770 F. Supp. 3d at 327, *judgment entered,* No. 1:25-CV-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025); *DOE*, 2025 WL 1119791, at *1.

Despite its complexity, this case was—indeed, it *had to be*—litigated quickly.  NSF issued its Rate Cap Policy on Friday, May 2, 2025, and it was set to take effect the following Monday, May 5, *i.e.*, the next business day.  Given concerns that NSF would start issuing grants under the new Policy immediately, Plaintiffs filed their complaint on Monday, May 5.  Three days later—less than a week after the Policy was first issued—they filed a motion for a preliminary injunction, or in the alternative, summary judgment, along with 38 declarations from IHEs outlining the harms that would come from allowing the Policy to go into effect.  After agreeing to stay implementation of the Policy in exchange for additional time to respond to Plaintiffs' motion, *see* Electronic Order, Doc. No. 52, Defendants filed a cross-motion for summary judgement.  Plaintiffs filed a combined reply and response, and Defendants filed a reply.  The Court heard oral argument from both parties on June 13, 2025.

One week later, in a thorough, well-reasoned decision, this Court granted summary

---

[1] *See* NIH, NOT-OD-25-068, *Supplemental Guidance to the 2024 NIH Grants Policy Statement: Indirect Cost Rates* (Feb. 7, 2025), https://grants.nih.gov/grants/guide/notice-files/NOT-OD-25-068.html; DOE, *Policy Flash 2025-22: Adjusting Department of Energy Grant Policy for Institutions of Higher Education (IHE)* (Apr. 11, 2025), https://www.energy.gov/management/pf-2025-22-pf-2025-22-adjusting-department-energy-grant-policy-institutions-higher; Pete Hegseth, Secretary of Defense, *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (May 14, 2025), Implementation of a 15 Percent Indirect Cost Cap on Assistance Awards to Institutions._.pdf; Emil Michael, Under Secretary of Defense, *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (June 12, 2025), https://www.cogr.edu/sites/default/files/DoD%20Implementation%20of%20SECDEF%20Indirect%20Cost%20Cap%20Memo%20-%202025-06-12.pdf.

judgment to Plaintiffs across the board and denied Defendants' cross-motion for summary judgment as moot. The Court rejected Defendants' threshold arguments regarding standing and justiciability. *AAU v. NSF*, 788 F. Supp. 3d 106, 122–28 (D. Mass. 2025). On the merits, the court held—as the courts in *NIH* and *DOE* similarly did before it—that NSF's Rate Cap Policy was not authorized by statute, *id*. at 128–31; violated the governing regulations, *id*. at 131–34; and was arbitrary and capricious on various grounds, *id*. at 134–38. The Court vacated the policy and declared it unlawful, which provided full relief to AAU and its members, and, indeed, to all IHEs that would have been subject to the Policy. *Id*. at 143.

Defendants appealed. *See* Notice of Appeal, Doc. No. 85. Before briefing in the First Circuit could begin, Defendants changed course and filed an unopposed motion to dismiss their appeal. Mot. Dismiss Appeal, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 26, 2025). The First Circuit granted the motion and issued the mandate terminating this case on September 30, 2025. Judgment, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025); Mandate, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025).

AAU now files this timely motion for attorneys' fees and costs under the EAJA.

## LEGAL STANDARD

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . ., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). To receive attorneys' fees and costs under the EAJA, the First Circuit requires an eligible plaintiff to show that: (1) it "is the prevailing party in the civil action"; (2) its "petition was timely filed"; (3) "the government's position was not substantially justified"; and (4) "no special circumstances make an award against the government unjust."

*Castaneda-Castillo v. Holder*, 723 F.3d 48, 57 (1st Cir. 2013) (citing *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990)).

## ARGUMENT

### I.    Plaintiffs are entitled to attorneys' fees and costs under the EAJA

AAU is entitled to an award of attorneys' fees and costs under the EAJA because it is the entity responsible for paying the legal fees and costs in this matter and this request meets the statutory requirements: AAU is an eligible, prevailing party, its petition is timely, Defendants' position was not substantially justified, and no special circumstances make an award unjust.  *See* 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(B).  Moreover, the fees requested are reasonable in light of the expertise of AAU's attorneys, the complexity of the legal issues, the stakes of the litigation, and the complete relief obtained.  *See id.* § 2412(d)(2)(A).

#### A.    AAU meets EAJA's eligibility requirements to receive attorneys' fees and costs.

A prevailing 501(c)(3) organization is eligible to recoup fees and costs under the EAJA "regardless of the net worth of such organization," as long as it does not have "more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).  AAU is a 501(c)(3) organization that has fewer than 500 employees and is thus eligible for EAJA fees and costs.

#### B.    AAU is a prevailing party, its petition was timely filed, and no special circumstances make an award unjust.

Plaintiff is a prevailing party under the EAJA.  A "prevailing party" is one that has been "awarded some relief by the court." *Castaneda-Castillo*, 723 F.3d at 57 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001)).  AAU received relief through vacatur of the NSF Rate Cap Policy and a declaration of its unlawfulness from this Court.  *NSF*, 788 F. Supp. 3d at 143.

This petition is timely.  The EAJA requires that a petition for attorneys' fees and costs be

filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). A "final judgment" is a judgment that is final and unappealable. *Id.* § 2412(d)(2)(G). The First Circuit entered an unappealable, final judgment in this case on September 30, 2025. Judgment, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025); Mandate, *AAU v. NSF*, No. 25-1794 (1st Cir. Sept. 30, 2025). This motion was timely filed within thirty days of that final judgment.

There are no special circumstances that would justify the denial of attorneys' fees and costs in this suit, and Defendants bear the burden of proof should they argue otherwise. *See McDonald v. Bowen*, 693 F. Supp. 1298, 1302 (D. Mass. 1988), *aff'd in part, remanded in part sub nom. McDonald v. Sec'y of Health & Hum. Servs.*, 884 F.2d 1468 (1st Cir. 1989).

## C. The government's position was not substantially justified.

Once an EAJA petitioner alleges that the government's position was not substantially justified, the government bears "the burden of establishing *both* that 'the agency action giving rise to the litigation was substantially justified' *and* that 'its litigation positions were substantially justified.'" *Tang v. Chertoff*, 689 F. Supp. 2d 206, 214 (D. Mass. 2010) (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 545 (3d Cir. 2001)); *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001) (directing "courts . . . to examine both the prelitigation actions or inaction of the agency on which the litigation is based and the litigation position of the United States" when determining whether a position is substantially justified). The government is required to demonstrate, by a preponderance of the evidence, that its overall position had "a reasonable basis both in law and in fact." *Berishev v. Chertoff*, 486 F. Supp. 2d 202, 206 (D. Mass. 2007) (quoting *Pierce v. Underwood*, 487 U.S. 552, 563 (1988)); *see also Pierce*, 487 U.S. at 566 n.2 ("[A] position can be . . . substantially . . . justified if a reasonable person could think it correct."). Also relevant to the analysis is whether "a string of court decisions" have come out for or against the government on a

particular issue. *See Schock*, 254 F.3d at 6 (citing *Pierce*, 487 U.S. at 568).

Neither NSF's issuance of the Rate Cap Policy, nor its positions in litigation, were substantially justified. The lack of justification for Defendants' attempt to upend a decades-old research funding regime in one fell swoop is underscored by their issuing the Policy with effectively zero notice before its planned effective date (*i.e.*, the following business day) and the complete absence of an administrative record beyond the text of the Policy itself. *See* Defs.' Opp'n to Pls.' Mot. to Expedite, Doc. No. 47 at 3 ("NSF has informed plaintiffs that NSF's Policy Notice is the entirety of the record NSF will rely upon as the basis for the challenged agency action."). The administrative record "must consist of all documents and materials directly or indirectly considered by [the] agency decision-makers." *Roe v. Mayorkas*, No. 22-CV-10808, 2024 WL 5198705, at *7 (D. Mass. Oct. 2, 2024) (internal quotation marks omitted). That Defendants apparently considered nothing beyond the Rate Cap Policy itself before issuing the Policy makes clear that nothing about the Policy or this litigation was "substantially justified."

This Court found NSF's Policy was contrary to law and arbitrary and capricious in multiple, independent ways, any one of which could have supported a decision to vacate the Policy in its entirety. The Court held that neither the National Science Foundation Act of 1950, 42 U.S.C. §§ 1861, *et seq.*, nor the general indirect cost statute, 41 U.S.C. § 4708, authorized Defendants to issue the Policy, *NSF*, 788 F. Supp. 3d at 128–31. The Court also held that Defendants violated multiple regulations in multiple ways, including: 2 C.F.R. § 200.414(c), "which requires NSF to accept negotiated indirect cost rates except in specific circumstances and after complying with certain requirements," and which the Court found the agency did not comply with here; 2 C.F.R. § 200.414(f), which allows for a 15% *de minimis* rate in certain circumstances not present here; as well as other regulations that make up the "regulatory framework governing recovery of indirect

costs," *id.* at 131–34. Finally, the Court held that the Policy was arbitrary and capricious because:

- NSF failed to explain or support its claim that the Policy would "achieve efficiency in the grant awards process," *id.* at 136;
- NSF failed to explain or support its claim that the Policy "ensures consistent treatment of all IHE financial assistance recipients, *id.* (alterations omitted);
- The court "[could] not discern how NSF determined that the 15% Indirect Cost Rate will make NSF grant funding more effective," as NSF claimed, *id.*;
- NSF "ignore[d] important aspects of the problem," including NSF's statutory duties to "support" and "strengthen" scientific research and education, *id.* at 137 (citing 42 U.S.C. § 1862(a)(1));
- NSF "fail[ed] to meaningfully address Plaintiffs' reliance interests," *id.* at 137–38; and
- NSF failed to explain why it believed the Policy "provides a better approach" to achieving government efficiency than the existing audit process, *id.* at 138.

The myriad legal defects and factual shortcomings identified by this Court demonstrate that Defendants' issuance and defense of the Policy were without legal or factual merit and were not substantially justified.

But Defendants' lack of factual or legal basis for the Rate Cap Policy is even more egregious given judicial decisions enjoining and/or vacating similar policies enacted by other agencies, both before and since NSF issued its Policy. As noted, NSF issued and defended its Policy after courts in this District had already enjoined nearly identical policies issued by two other agencies. *See NIH*, 770 F. Supp. at 327, *judgment entered,* No. 1:25-CV-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025); *DOE*, 2025 WL 1119791, at *1. Rather than take those decisions into account, Defendants made almost identical arguments in their briefing that multiple courts had already rejected in prior, materially similar cases. *See, e.g.*, Reply Mem. and Mem. in Opp., Doc. No. 63 at 9 (noting that "[t]wo courts ha[d] already rejected" NSF's argument that it could simply do away with negotiated cost rates (citing *AAU v. DOE*, 789 F. Supp. 3d 118, 145–47 (D. Mass. 2025); *NIH*, 770 F. Supp. 3d at 297–98)). The government has forced AAU to litigate four almost identical suits against four almost identical Rate Cap Policies, and AAU has won permanent

relief in all four, three of which were handed down before Defendants voluntarily dismissed this suit. *See NIH*, 770 F. Supp. at 327, *judgment entered,* No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025); Final Judgment, *AAU v. DOE*, 1:25-cv-10912 (D. Mass. June 30, 2025), ECF No. 71; *NSF*, 788 F. Supp. 3d at 143–44; *AAU v. DOD*, No. 25-cv-11740, 2025 WL 2899765, at *30–31 (D. Mass. Oct. 10, 2025).

While the "mere fact that the government does not prevail is not dispositive on the issue of substantial justification," *Schock*, 254 F.3d at 5 (citing *De Allende v. Baker*, 891 F.2d 7, 13 (1st Cir.1989)), that is not the situation here. The government has lost, handily, at every stage of litigation in every suit brought against its Rate Cap Policies. This "string of losses" in nearly identical cases clearly shows that Defendants' Policy and litigation positions are not and never have been substantially justified.

## II.    The requested amount of attorneys' fees and costs is reasonable.

AAU requests a total of $330,453.56 in attorneys' fees and costs, as set forth below. The EAJA sets a statutory rate of $125 per hour and allows for a cost-of-living adjustment. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). It also permits courts to adjust the hourly rate upward due to a "special factor." 28 U.S.C. § 2412(d)(2)(A). The Supreme Court has interpreted "special factor" to mean the attorneys in question have "distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *See Pierce*, 487 U.S. at 572; *see also e.g.*, *McDonald*, 693 F. Supp. at 1306 (granting a special factor enhancement where attorneys were "specialists" in an area of law, "educate[d] both the court and the other attorneys" about their area of expertise, and there was a "relative shortage of attorneys possessing" such skills).

### A.  The requested rates are reasonable.

An upward adjustment to the statutory rate is warranted here, both to account for the cost of living and given the distinctive knowledge and specialized skill of AAU's attorneys, gleaned from their work on prior cases challenging strikingly similar policies. Including both adjustments together, AAU requests an attorney rate of $500 per hour for Lindsay Harrison, Ishan Bhabha, Zachary Schauf, Adam Unikowsky, Betsy Henthorne, Anjali Motgi, and Steve Englund from Jenner & Block, as well as Paul Clement and James Xi from Clement & Murphy, who had developed "distinctive knowledge [and] specialized skill" in litigating against Rate Cap Policies when this suit was filed, and $265.89 per hour for all other attorneys that worked on this litigation.

First, the District of Massachusetts has granted a cost-of-living adjustment in recent cases, *see Conserva v. Kijakazi*, No. 22-cv-10205, 2023 WL 8126660, at *2 (D. Mass. June 23, 2023); *Clement v. Saul*, No. 18-cv-10550, 2020 WL 13558730, at *3 (D. Mass. Mar. 26, 2020), and applying the same formula approved in those cases would bring the updated EAJA hourly rate to $265.89 per hour.[2]

Second, in addition to expertise and experience in civil litigation and administrative law, certain attorneys involved in this matter have litigated a total of four challenges to agency Rate Cap Policies, including two that were fully briefed and argued before NSF issued its policy. Declaration of Lindsay C. Harrison Ex. 2, Doc. No. 90-2 at ¶ 4; Declaration of Paul D. Clement Ex. 4, Doc. No. 90-4 at ¶ 5. In the course of those challenges, those attorneys have developed distinctive knowledge and specialized skills regarding the statutory and regulatory frameworks

---

[2] This rate was calculated by finding the average CPI-U of the months available (January, March, May, July, and September) for the Boston area in 2025 (346.296), multiplying that value by the statutory rate ($125), and dividing by the CPI-U for the Boston area in March of 1996 (162.8). *See* U.S. Bureau of Labor Statistics, Databases, Tables & Calculators by Subject, https://data.bls.gov/pdq/SurveyOutputServlet?data_tool=dropmap&series_id=CUURS1 1ASA0,CUUSS11ASA0 (last visited Oct. 28, 2025) (Boston area CPI-U); *Castaneda-Castillo*, 723 F.3d at 76 (explaining methodology); *Tang*, 689 F. Supp. 2d at 218 (same).

governing indirect costs, as well as the factual and legal bases for challenging policies limiting such costs, that no other team of attorneys have developed. Ex. 2, Doc. No. 90-2 at ¶ 5; Ex. 4, Doc. No. 90-4 at ¶ 6. That experience and expertise made it possible to file and litigate this challenge quickly, which was necessary given NSF's rush to issue and begin implementing the Policy and the likelihood of irreparable harm to AAU and its members if that had come to pass. *See NSF*, 788 F. Supp. 3d at 140–43 (finding irreparable harm should the NSF Rate Cap Policy have gone into effect); Ex. 2, Doc. No. 90-2 at ¶ 3; Ex. 4, Doc. No. 90-4 at ¶ 4. Put simply, there was no time to waste. *Cf. Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 492 (1st Cir. 2000) (noting that "in most cases an otherwise competent lawyer can—albeit at the cost of some extra time—learn enough about the particular controversy to litigate in the area adequately"). It has also permitted those attorneys to bill fewer hours on this litigation than would other lawyers, even those generally familiar with and experienced in APA litigation. This special factor warrants a rate of $500 per hour for the time spent by attorneys on this litigation, which is substantially less than the hourly rate charged to AAU for their expertise.[3] Ex. 2, Doc. No. 90-2 at ¶ 6; Ex. 4, Doc. No. 90-4 at ¶ 7.

AAU's requested rate of $95 per hour for paralegals is also reasonable. Courts in this district have approved such a rate in several recent cases. *See, e.g.*, *Conserva*, 2023 WL 8126660, at *3; *Smyth v. Kijakazi*, No. CV 20-12275, 2021 WL 5771634, at *4 (D. Mass. Dec. 6, 2021); *Cano v. Saul*, 505 F. Supp. 3d 20, 30–31 (D. Mass. 2020); *Blaney v. Saul*, No. 18-cv-12009, 2020 WL 6162944, at *3, 5 (D. Mass. Oct. 21, 2020); *Enos v. Saul*, No. 19-cv-10023, 2020 WL 6082127, at *1 n. 4 (D. Mass. Oct. 15, 2020).

---

[3] In the alternative, Plaintiff proposes that fees for all attorneys be granted at a rate of $265.89 per hour, the cost-of-living adjusted rate.

**B. The number of hours is reasonable.**

The number of hours billed by the attorneys and paralegals in this case is reasonable in light of the complexity of the issues in this case, the existential stakes for AAU and its members, and the complete relief obtained. While AAU's attorneys have distinctive knowledge and specialized skill and experience litigating challenges to agency actions limiting indirect cost rates, this challenge still required in-depth research and extensive briefing on a complicated interlocking statutory and regulatory scheme. The scale and implementation timeline—over a single weekend—of the Rate Cap Policy required a large team of attorneys across two law firms to quickly prepare and file a complaint; compile evidence presented in 41 separate, comprehensive declarations; and prepare and file multiple briefs on an abbreviated timeline, all in order to protect hundreds of millions of dollars in funding for AAU's members. *See* Mem. Supp. Mot. for Prelim. Inj. and Summ. J. at 35 n.12, Doc. No. 41 (listing anticipated annual losses for declarants due to the NSF Rate Cap Policy); Harrison Decl. Ex. 2, Doc. No. 90-2 at ¶ 5; Clement Decl. Ex. 4, Doc. No. 90-4 at ¶ 6. In addition to preparing briefs and evidentiary filings, time reasonably spent on this matter included negotiations with Defendants over timing and implementation of the Policy; preparation for and presentation of oral argument; strategy and correspondence regarding the government's appeal; and preparation of this fee and costs petition. The efficacy of the time spent was demonstrated by the full relief achieved in this case.

\*        \*        \*

As set forth in the attached declarations and charts of time entries, AAU seeks fees for 375 hours of attorney time at a rate of $500 per hour (for a total of $187,500), 502.9 hours of attorney time at a rate of $265.89 per hour (for a total of $133,716.08), and 89.5 hours of paralegal time at

a rate of $95 per hour (for a total of $8,502.50).[4]  *See* Consolidated Time Chart Ex. 1, Doc. No. 90-1; Ex. 3, Doc. No. 90-3; Ex. 5, Doc. No. 90-5.  AAU also seeks costs of $734.98 associated with providing courtesy copies of the briefing.  Ex. 5, Doc. No. 90-5; *see* 28 U.S.C. 2412(a)(1) ("[A] judgment for costs . . . may be awarded to the prevailing party.").  These requests are reasonable and should be granted pursuant to the EAJA.

## CONCLUSION

For the reasons outlined above, AAU respectfully requests that this Court grant its motion and award attorneys' fees and costs under the EAJA in the amount of $330,453.56.

Dated: October 30, 2025

JENNER & BLOCK LLP

By: /s/ 

Lindsay C. Harrison (admitted *pro hac vice*)
Ishan K. Bhabha (admitted *pro hac vice*)
Lauren J. Hartz (admitted *pro hac vice*)
Elizabeth Henthorne (admitted *pro hac vice*)
Anjali Motgi (admitted *pro hac vice*)
Zachary C. Schauf (admitted *pro hac vice*)
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com
IBhabha@jenner.com
LHartz@jenner.com
BHenthorne@jenner.com
AMotgi@jenner.com
ZSchauf@jenner.com

Shoba Pillay, BBO No. 659739
353 N Clark Street

Respectfully submitted,

CLEMENT & MURPHY, PLLC

By: /s/Paul D. Clement 

Paul D. Clement (admitted *pro hac vice*)
James Y. Xi (admitted *pro hac vice*)
Kyle R. Eiswald (admitted *pro hac vice*)
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com
james.xi@clementmurphy.com
kyle.eiswald@clementmurphy.com

*Attorneys for Association of American Universities, Association of Public and Land-grant Universities, and American Council on Education*

---

[4] AAU reserves its right to request additional fees for as-of-yet unbilled work carried out as part of this fee proceeding.

12

Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com

*Attorneys for All Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2025, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

*/s/*
Lindsay C. Harrison (admitted *pro hac vice*)
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com

14