**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-11231-IT |
| | ) |
| NATIONAL SCIENCE FOUNDATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' OPPOSITION TO ASSOCIATION OF AMERICAN
UNIVERSITIES' MOTION FOR ATTORNEY FEES AND COSTS
<u>PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT</u>**

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD........................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

    I.    A Fee Award is Not Warranted ................................................................................ 3

       A.    The Government's position was substantially justified. ................................... 3

       B.    Special circumstances make an award unjust. .................................................. 9

    II.   AAU's Fees Should Be Reduced .......................................................................... 13

       A.    AAU has not shown it is entitled to an increased hourly fee......................... 14

       B.    The number of hours should be reduced.......................................................... 16

           1.    Plaintiffs' Attorneys Block-Billed Their Hours........................................ 16

           2.    Many of the Entries are Vague .................................................................. 17

           3.    Plaintiffs' Team of Attorneys Was Unnecessarily Large .......................... 18

CONCLUSION................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ardestani v. I.N.S.*,
  502 U.S. 129 (1991) ................................................................................................ 3

*Aronov v. Napolitano*,
  562 F.3d 84 (1st Cir. 2009) .............................................................................. 1, 7

*Assoc. of Am. Univs. v. Dep't of Energy*,
  789 F. Supp. 3d 118 (D. Mass. 2025) ............................................................. 8, 9

*Assoc. of Am. Univs. v. Dep't of Energy*,
  No. 25-cv-10912, 2025 WL 1119791 (D. Mass. Apr. 16, 2025) ............................ 8

*Assoc. of Am. Univs. v. Nat'l Sci. Found.*,
  788 F. Supp. 3d 106 (D. Mass. 2025) ...................................................... passim

*Assoc. of Am. Univs. v. Dep't of Defense*,
  No. 25-11740-BEM, 2025 WL 2899765 (D. Mass. Oct. 10, 2025) ........................ 8

*Atlantic Fish Spotters Ass'n v. Daley*,
  205 F.3d 488 (1st Cir. 2000) .......................................................................... 14, 15

*Bowey v. West*,
  218 F.3d 1373 (Fed. Cir. 2000) ............................................................................ 7

*Calhoun v. Acme Cleveland Corp.*,
  801 F.2d 558 (1st Cir. 1986) .............................................................................. 17

*Cano v. Saul*,
  505 F. Supp. 3d 20 (D. Mass. 2020) ................................................................... 18

*Comm'r, I.N.S. v. Jean*,
  496 U.S. 154 (1990) ............................................................................................ 3, 4

*E.E.O.C. v. AutoZone, Inc.*,
  934 F. Supp. 2d 342 (D. Mass. 2013) ..................................................... 16, 17, 18

*Gay Officers Action League v. Puerto Rico*,
  247 F.3d 288 (1st Cir. 2001) .............................................................................. 18

*Griffith v. Comm'r of Soc. Sec.*,
 987 F.3d 556 (6th Cir. 2021) ..................................................... 7

*Holman v. Vilsack*,
 117 F.4th 906 (6th Cir. 2024) ................................................... 9

*Lewis v. Sec'y of Health & Human Servs.*,
 370 F. Supp. 3d 267 (D. Mass. 2019) ..................................... 15

*Lipsett v. Blanco*,
 975 F.2d 934 (1st Cir. 1992) ................................................... 17

*Louisiana ex rel. Guste v. Lee*,
 853 F.2d 1219 (5th Cir. 1988) ........................................... 10, 11

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ................................................................. 6

*Mason v. Me. Dep't of Corr.*,
 387 F. Supp. 2d 57 (D. Me. 2005) .......................................... 16

*Massachusetts v. Nat'l Insts. of Health*,
 770 F. Supp. 3d 277 (D. Mass. 2025) ................................. 7, 8, 9

*Michel v. Mayorkas*,
 68 F.4th 74 (1st Cir. 2023) ...................................................... 4

*Miller v. Holzmann*,
 575 F. Supp. 2d 2 (D.D.C. 2008) ........................................... 18

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*,
 972 F.2d 669 (6th Cir. 1992) ................................................. 11

*New Hampshire Hosp. Assoc. v. Azar*,
 Civ. No. 15-cv-460-LM, 2019 WL 1406631 (D.N.H. Mar. 28, 2019) ................... 17

*New Jersey v. EPA*,
 703 F.3d 110 (D.C. Cir. 2012) .......................................... 17, 18

*Omni Packaging, Inc. v. U.S. I.N.S.*,
 940 F. Supp. 42 (D.P.R. 1996) ................................................. 7

*Pierce v. Underwood*,
 487 U.S. 552 (1988) ................................................ 3, 8, 14, 15

*Roanoke River Basin Ass'n v. Hudson*,
  991 F.2d 132 (4th Cir. 1993) ............................................................. 7

*Role Models Am., Inc. v. Brownlee*,
  353 F.3d 962 (D.C. Cir. 2004) ......................................................... 17

*Saysana v. Gillen*,
  614 F.3d 1 (1st Cir. 2010) .......................................................... passim

*Scarborough v. Principi*,
  541 U.S. 401 (2004) ......................................................................... 1

*Schock v. United States*,
  254 F.3d 1 (1st Cir. 2001) ................................................................ 3

*Sierra Club v. Sec'y of Army*,
  820 F.2d 513 (1st Cir. 1987) .......................................................... 10

*Sierra Club v. U.S. Army Corps of Engineers*,
  776 F.2d 383 (2d Cir. 1985) ...................................................... 11, 12

*Sinclair v. Berryhill*,
  284 F. Supp. 3d 111 (D. Mass. 2018) ............................................ 16

*Sloan v. Pugh*,
  351 F.3d 1319 (10th Cir. 2003) ...................................................... 11

*Torres-Rivera v. Espada-Cruz*,
  Civ. No. 99-1272, 2007 WL 906176 ,at (D.P.R. Mar. 22, 2007) ............ 16

*Torres-Rivera v. O'Neill-Cancel*,
  524 F.3d 331 (1st Cir. 2008) .......................................................... 16

*Unification Church v. I.N.S.*,
  762 F.2d 1077 (D.C. Cir. 1985) ...................................................... 13

*United States v. 1,378.65 Acres of Land*,
  794 F.2d 1313 (8th Cir. 1986) ........................................................ 10

*Wild Fish Conservancy v. Thom*,
  No. C20-417, 2025 WL 3259740 (W.D. Wash. May 19, 2025) ............... 18

*Williams v. Barnhart*,
  206 Fed. App'x 378 (5th Cir. 2006) ................................................ 14

**Statutes**

28 U.S.C. § 2412 ............................................................................................ passim

41 U.S.C. § 4708 ..................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(a)(2) ......................................................................................... 6

Plaintiff Association of American Universities' ("AAU") motion for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, should be denied. Congress enacted the EAJA "to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." *Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009) (en banc) (quoting *Scarborough v. Principi*, 541 U.S. 401, 407 (2004)). AAU, essentially a trade association with member institutions of higher education ("IHEs") that have no financial barriers to contesting government action, is not entitled to attorney fees under the EAJA because the position of the United States was substantially justified and other circumstances make an award unjust. In the event the Court decides to award fees, the fee award should be reduced for two reasons. First, AAU has not shown that it is the sole plaintiff responsible for the claimed fees. Second, AAU's fee award should be reduced to $167,745.82 after eliminating excessive, vague, and block billing.

## BACKGROUND

On May 2, 2025, the National Science Foundation ("NSF") promulgated a policy notice entitled "Implementation of Standard 15% Indirect Cost Rate" (the "Policy"), Doc. No. 61-1, applying "a standard indirect cost rate not to exceed 15%" to all new grant awards made to institutions of higher education ("IHEs") on or after May 5, 2025. Unlike indirect cost rate policies issued by the National Institutes of Health ("NIH") and the Department of Energy ("DOE"), NSF's Policy did not apply the 15 percent cap to existing grants or continuing grant increments and did not require any amendments to existing budgets. *Id.*

On May 5, 2025, AAU, two other organizations,[1] and 13 IHEs jointly filed this litigation to challenge the NSF Policy. Three days after filing their complaint, Plaintiffs moved for a

_____

[1] The other two organizations are American Council on Education ("ACE") and the Association of Public and Land-grant Universities ("APLU"). ACE is composed of more than 1,600 IHEs

preliminary injunction and summary judgment. Mot. for Prelim. Inj. and Summ. J., Doc. No. 40.

In addition to declarations from the 13 plaintiff IHEs, Plaintiffs submitted declarations from 25

additional IHEs. *Id*. To streamline the proceedings, NSF voluntarily agreed to temporarily stay

implementation of the policy until the hearing on the motion for summary judgment, *see* Defs.'

Notice in Resp. to Ct.'s Order, Doc. No. 50, thereby eliminating the need for separate briefing

and hearing on Plaintiffs' motion for preliminary injunction, *see* Elec. Order, Doc. No. 52.[2] The

litigation thus proceeded directly to expedited summary judgment. On June 20, 2025—46 days

after Plaintiffs filed their complaint—the Court issued its 52-page memorandum and order

resolving the litigation. *Assoc. of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106 (D. Mass.

2025) ("*NSF*"). NSF appealed the decision on August 14, 2025, *see* Notice of Appeal, Doc. No.

85, but voluntarily dismissed the appeal in September 2025.

On October 30, 2025, AAU filed this motion for an EAJA award, Pls.' Mot. for Att'ys'

Fees and Costs, Doc. No. 90, requesting $330,453.56 for 375 hours of attorney time at $500 per

hour, 502.9 hours of attorney time at $265.89 per hour, and 89.5 hours of paralegal time at $95

per hour. *See* Pls.' Mem. in Supp. of Mot. for Att'ys' Fees and Costs, Doc. No. 92 at 16–17.

## LEGAL STANDARD

An award of fees and expenses under the EAJA is warranted where (1) the applicant is

eligible and is a prevailing party; (2) the government fails to establish that its position, viewed

over the entire course of the dispute, was substantially justified; (3) no special circumstances

exist to make an award unjust; and (4) the petition is timely. 28 U.S.C. § 2412(d)(1)(A)–(B);

---

and related organizations. Doc. No. 40-2 at ¶ 3. APLU is composed of more than 230 IHEs and
affiliates. Doc. No. 40-3 at ¶ 3.

[2] NSF subsequently agreed to stay implementation through June 20, 2025. Defs.' Mem. in Opp.
to Mot. for Summ. J. and in Supp. of Cross-Mot. for Summ. J., Doc. No. 62 at 51 n.30.

*Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990).  Even where warranted, the fees must be reasonable.  28 U.S.C. § 2412(d)(2)(A).  Because the EAJA functions as a partial waiver of sovereign immunity by making the United States liable for fees for which it would not otherwise be liable, it "must be strictly construed in favor of the United States."  *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).

## ARGUMENT

AAU is not entitled to fees under the EAJA for two reasons.  First, the United States was substantially justified in its position that NSF's governing statutes and regulations authorized NSF to limit reimbursement of indirect costs in grants awarded to IHEs.  Second, because this case is ultimately litigated by and for large IHEs without cost restraints, special circumstances exist to make an EAJA award unjust.  Even if the Court were to award fees to AAU under the EAJA, the Court should require AAU to submit evidence that it is the sole plaintiff responsible for the claimed fees, and the fees should be reduced due to excessive, vague, and block billing by Plaintiffs' attorneys.

## I.    A Fee Award is Not Warranted

### A.   The Government's position was substantially justified.

The EAJA does not authorize fee awards when "the position of the United States was substantially justified."  28 U.S.C. § 2412(d)(1)(A).  To meet this standard, the government's position need not have prevailed.  *See, e.g.*, *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001) ("The mere fact that the government does not prevail is not dispositive on the issue of substantial justification.").  It need not even have been "justified to a high degree."  *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Rather, the government's position is "substantially justified" if it was "justified in substance or in the main." *Id.* (quoting *Pierce*, 487 U.S. at 565).  The government therefore only needs to show by a

3

preponderance of the evidence that its position had "a reasonable basis in law and fact." *Id.* at 6. The government's "position" in this context is its "case as an inclusive whole, rather than as atomized line-items." *Id.* at 5 (quoting *Comm'r, I.N.S.*, 496 U.S. at 161–62 ). When analyzing substantial justification, the court therefore must "arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action." *Id.* (citation omitted).

The crux of NSF's position in this case was that the Policy was a lawful exercise of NSF's discretionary grantmaking authority. That core position underlays NSF's arguments that the Court lacked APA jurisdiction, that the Policy was authorized by statute, and that the Policy complied with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (the "Guidance") issued by the Office of Management and Budget ("OMB"). *See* Doc. No. 62 at 14–35; *see also Saysana*, 614 F.3d at 3, 6 (government's "position" was issue occupying "the lion's share of the Government's brief"). That position was substantially justified for three reasons.

*First*, the issue of NSF's authority to cap indirect costs is a matter of first impression. "When an issue before the court is novel and has little to no precedent, 'courts have found that an award of EAJA fees is not warranted.'" *Michel v. Mayorkas*, 68 F.4th 74, 79 (1st Cir. 2023) (quoting *Saysana*, 614 F.3d at 6). Here, as in *Michel*, the First Circuit had not, and has not yet, determined the scope of NSF's (or any agency's) authority to cap costs in grants or analyzed the Guidance's mechanism for deviating from negotiated indirect cost rates. *See id.* at 79. NSF therefore was substantially justified in issuing the Policy and defending this litigation. *See Saysana*, 614 F.3d at 6 (government is justified in "seek[ing] specific instruction from the court" on an issue "of first impression among the courts of appeals")

*Second*, historical precedent supported NSF's view that the Policy was lawful.  NSF itself capped reimbursement of indirect costs at 15 percent and then 20 percent in the 1950s and 1960s, indicating NSF has long viewed itself as having that authority.  *See* Doc. No. 62 at 17.  In 1965, the Comptroller General concluded that NSF's discretionary statutory authority allowed use of predetermined indirect cost rates.  *See id.* at 26–27.  And OMB has capped reimbursement of aspects of indirect costs for more the past 34 years.  *See id.* at 18–19.  This historical precedent reasonably indicated NSF had statutory authority to cap reimbursement of indirect costs and that rate caps were not discordant with the Guidance.

*Third*, NSF's position had a reasonable basis in law.  As NSF argued, NSF's organic statute gives it broad discretionary authority to issue grants.  *See id.* at 12, 26–27; *NSF*, 788 F. Supp. 3d at 129 (NSF's organic statute "provide[s] NSF broad, general grant-making authority" and "do[es] not address the methods by which NSF may provide for the payment of indirect costs").  Congress also has authorized the use of predetermined indirect cost rates in grants issued to IHEs.  *See* Doc. No. 62 at 27.  NSF's argument that either or both of those statutes authorized the Policy was reasonable.  *See id.* at 26–28.  Though the Court did not ultimately find NSF's argument persuasive, it declined to decide whether NSF was "statutorily barred from imposing any across-the-board cap on indirect cost rates," *NSF*, 788 F. Supp. 3d at 131, underscoring the reasonableness of NSF defending its position.  Moreover, NSF reasonably argued that the Guidance's express provision permitting deviations from the governmentwide negotiated indirect cost rates allowed NSF to cap indirect cost rates in awards issued to IHEs. *See* Doc. No. 62 at 14–15, 29–30.

Thus, NSF's "position" in this case—that the Policy was a lawful exercise of NSF's discretionary grantmaking authority—was substantially justified under the EAJA.  Though the

Court need only consider this core position, *see Saysana*, 614 F.3d at 5–6, other aspects of the case underscore that NSF's position with respect to the case as a whole was reasonable. Unlike the indirect cost rate policies previously issued by NIH and DOE, NSF's Policy applied only to new awards made after its issuance and did not require IHEs to amend budgets for existing awards. *See* Doc. No. 62 at 1–2. NSF reasonably questioned whether Plaintiffs had standing to challenge a Policy that impacted only future grants that had not yet been awarded. *See id.* at 21–22. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" and "an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). NSF's view that the Policy was issued in a way that was not arbitrary and capricious was substantially justified because the Policy acknowledged it changed NSF's preexisting policy, explained the reason for the change, and accounted for reliance interests by only applying to new awards. *See* Doc. No. 62 at 35–37. NSF correctly pointed out that, even if Plaintiffs won on the merits, Plaintiffs' request for the extraordinary remedy of permanent injunctive relief was unwarranted. *See NSF*, 788 F. Supp. 3d at 143. And, as discussed above, NSF agreed to temporarily stay the Policy's implementation, allowing the parties to immediately proceed to expedited summary judgment. *See supra* at 2. As a result, the parties' merits arguments were presented and the case resolved as quickly and efficiently as possible, before NSF's 60 days to respond to the complaint had even passed. *See id*; Fed. R. Civ. P. 12(a)(2). These stances emphasize that, when considered holistically, NSF's position in the case was substantially justified.

In contrast, AAU's constricted focus on the Court's findings and the process by which NSF issued the Policy, *see* Doc. No. 92 at 11–12, misses the mark. As discussed above, the Court determined NSF's position on relief was correct and declined to resolve the issue of

statutory authority, supporting the reasonableness of NSF's having litigated this case. That the

Court found other of NSF's arguments to be unavailing is not determinative. *See, e.g.*, *Aronov*,

562 F.3d at 94–95 (fee applicant's focus on "whether the agency was right or wrong" evinced a

"fundamental misapprehension of what substantially justified means"). Similarly, as discussed

above, NSF's view that the Policy was issued in a way that was not arbitrary and capricious was

substantially justified. However, even if the Court disagrees, any lack of justification on this

single issue does not subvert the reasonableness of NSF's position in the case as a whole. *See*

*Omni Packaging, Inc. v. U.S. I.N.S.*, 940 F. Supp. 42, 46 (D.P.R. 1996) (agency action may be

substantially justified under the governing statute while suffering from a "defect in crafting or

execution," such as "an inadequate explanation") (quotations omitted). NSF's position under the

EAJA was substantially justified, nonetheless. *See Saysana*, 614 F.3d at 6; *Griffith v. Comm'r of*

*Soc. Sec.*, 987 F.3d 556, 572 (6th Cir. 2021) (one argument's lack of substantial justification did

"not undermine the reasonableness of the government's position as a whole"); *Roanoke River*

*Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993) (rejecting "the view that *any*

unreasonable position taken by the government in the course of litigation automatically opens the

door to an EAJA fee award") (emphasis in original).

　　　　Finally, no "string of losses" weighed against NSF's position. Doc. No. 92 at 13.

Substantial justification is measured "at the time the government adopted its position," not when

"the EAJA motion is decided." *Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000). When

NSF adopted the Policy on May 2nd, only the *NIH* session had preliminarily considered the

merits of the government's position on the NIH policy. *See Massachusetts v. Nat'l Insts. of*

*Health*, 770 F. Supp. 3d 277, 287 (D. Mass. 2025) ("*NIH*"). The *DOE* session had simply issued

a temporary restraining order "to preserve the status quo" until "there is an opportunity to hear

from all parties." *Assoc. of Am. Univs. v. Dep't of Energy*, No. 25-cv-10912, 2025 WL 1119791, at *1 (D. Mass. Apr. 16, 2025).[3] Thus, when NSF issued the Policy, there was only a single preliminary loss on a different rate cap policy in the books, which patently is not a "string of losses." One district court decision disagreeing with the government does not render the government's position unreasonable.[4] *See Pierce*, 487 U.S. at 569 ("Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified."). Moreover, unlike the NIH and DOE policies, NSF's Policy did not apply to existing grants; it only applied to grants awarded after the Policy took effect. *AAU's* assertion that both the *NIH* and *DOE* courts "had already enjoined nearly identical policies issued by two other agencies," Doc. No. 92 at 12, is specious, at best.[5]

Moreover, NSF reasonably argued the NIH and DOE policies were materially different from the NSF Policy. Unlike the NIH and DOE policies, the NSF Policy only applied to newly issued awards. *Compare NSF*, 788 F. Supp. 3d at 121, *with NIH*, 770 F. Supp. 3d at 290, *and DOE*, 789 F. Supp. 3d at 130. The NSF Policy was issued pursuant to NSF's organic statute, which affords NSF broad discretion to allocate grant funding. *Compare NSF*, 788 F. Supp. 3d at

---

[3] The *DOE* court did not issue an opinion on the plaintiffs' motion for a preliminary injunction until May 15, more than two weeks after NSF issued the Policy. *See Assoc. of Am. Univs. v. Dep't of Energy*, 789 F. Supp. 3d 118 (D. Mass. 2025) ("*DOE*").

[4] Moreover, the *NIH* and *DOE* TRO decisions were issued by different sessions of the same Court within six weeks. Even the two decisions together therefore do not constitute a "string of losses" diminishing the government's position. *See Saysana*, 614 F.3d at 6 n.2 (two district court decisions issued less than two months apart did not make it "unreasonable for the Government to continue to question their reasoning").

[5] Similarly, AAU's attempt to inject the October 2025 decision in *Association of American Universities v. Department of Defense*, No. 25-11740-BEM, 2025 WL 2899765 (D. Mass. Oct. 10, 2025), into this application is improper. *See* Doc. No. 92 at 12–13. That decision was issued months after NSF issued the Policy and this litigation was resolved and is therefore irrelevant.

129, *with NIH*, 770 F. Supp. 3d at 288, 299–301, *and DOE*, 789 F. Supp. 3d at 148.  Neither *NIH*

nor *DOE* addressed whether the statute authorizing the use of predetermined indirect cost rates in

grants to IHEs, 41 U.S.C. § 4708, authorized those policies, while the Comptroller General

concluded in 1965 that NSF's authority to use predetermined indirect cost rates under its organic

statute extends beyond what is permitted in 41 U.S.C. § 4708.  *Compare* Doc. No. 62 at 26, *with*

*NIH*, 770 F. Supp. 3d at 318, *and DOE*, 789 F. Supp. 3d at 148.  And the Guidance provision

permitting NSF to deviate from negotiated indirect cost rates differed somewhat from the

corresponding regulation applicable to NIH.  *See DOE*, 789 F. Supp. 3d at 144 n.5 (explaining

difference).  Moreover, *NIH* (and later *DOE*) was issued on a motion for preliminary relief, not

on the merits, *see* 770 F. Supp. 3d at 287, limiting its persuasive authority.[6]  *See Holman v.*

*Vilsack*, 117 F.4th 906, 917 (6th Cir. 2024) (in the EAJA context, preliminary decisions' "import

is lessened by their posture").  It was therefore reasonable for NSF to maintain that its Policy was

authorized, even after the *NIH* and *DOE* decisions were issued.  *See Saysana*, 614 F.3d at 6 n.2

("developing body" of court decisions was "not so numerous or so uniform as to suggest that it

was unreasonable for the Government to continue to question their reasoning").  Because NSF's

position was substantially justified under the EAJA, AAU's fee request should be denied.

B. Special circumstances make an award unjust.

Moreover, an EAJA fee award is not warranted where "special circumstances make an

award unjust."  28 U.S.C. § 2412(d)(1)(A).  AAU is a lobbyist organization "composed of

---

[6] Although the government moved to convert the *NIH* decision (and eventually the *DOE* decision on preliminary injunction) into final judgment, it did so to promptly appeal the decision.  *See* Defs.' Mot. to Convert Order on PI into Order on Perm. Inj. and Final J., *Massachusetts v. NIH*, No. 1:25-cv-10338-AK, Doc. No. 108, at 2 (D. Mass. Apr. 4, 2025); *see also* Unopposed Mot. Final J., *AAU v. DOE*, No. 1:25-cv-10912-ADB, Doc. No. 68 at 1 (D. Mass. June 27, 2025).  The *NIH* and *DOE* appeals are still pending before the First Circuit.  *See Massachusetts v. NIH*, No. 25-1343 (1st Cir.); *AAU v. DOE*, No. 25-1727 (1st Cir.).

America's leading research universities."  Doc. No. 40-1 at ¶ 3.  It is further joined in this

litigation by thirteen of the leading research universities in the United States and two additional

IHE associations.  *Id.* at ¶ 5.  Indeed, AAU is suing "on behalf of its members" who "would have

standing to sue in their own right."  *NSF*, 788 F. Supp. 3d at 125.  But the "EAJA is designed to

'encourage relatively *impecunious* private parties to challenge abusive or unreasonable

governmental behavior by relieving such parties of the fear of incurring large litigation

expenses.'"  *Sierra Club v. Sec'y of Army*, 820 F.2d 513, 516–17 (1st Cir. 1987) (citing *United

States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1315–16 (8th Cir. 1986)) (emphasis added).

Moreover, "in special circumstances the participation of a party ineligible for EAJA fees may

make a fee award for other eligible parties unjust."  *Louisiana ex rel. Guste v. Lee*, 853 F.2d

1219, 1225 (5th Cir. 1988).  AAU is far from an impecunious party and it is joined by parties

ineligible for EAJA fees, making a fee award unwarranted.

    The EAJA's legislative history compels this conclusion.  Congress enacted the EAJA to

address concerns that parties would be deterred from challenging "unreasonable governmental

action because of the expense involved in securing the vindication of their rights.  The economic

deterrents to contesting government action are magnified in these cases by the disparity between

the resources and expertise of these individuals and their government."  H.R. Rep. No. 96-1418,

at 4984 (1980).  The EAJA fee "represents one way to improve citizen access to courts and

administrative proceedings [so that] a party does not have to choose between acquiescing to an

unreasonable government order or prevailing to his financial detriment. . . . [EAJA] provides

individuals an effective legal or administrative remedy where none now exists."  *Id.*, at 4991.  In

other words, "'[t]he underlying assumption of the EAJA is that the cost of litigation is a barrier

to contesting improper government action.'" *Sloan v. Pugh*, 351 F.3d 1319, 1322–23 (10th Cir.

2003) (quoting *Ewing v. Rodgers*, 826, F.2d 967, 970–71 (10th Cir. 1987)).

      An EAJA award is not warranted in this case because the cost of litigation is not a barrier

to the courts for AAU (or any other Plaintiff here). Even without the EAJA award, AAU (and its

members) possesses the financial means to procure an attorney or, as here, the services of "a

large team of attorneys across two law firms." Doc. No. 92 at 16. Awarding EAJA fees to

parties with the "economic power to pursue litigation against the government without being

deterred by the costs" undermines the congressional purposes of the EAJA and the "same result

occurs when a trade association's membership also contains a number of companies who can

readily afford the costs to protect their own interests." *See Nat'l Truck Equip. Ass'n v. Nat'l*

*Highway Traffic Safety Admin.*, 972 F.2d 669, 674 (6th Cir. 1992) (declining to award EAJA fees

to trade organization representing businesses ineligible to receive EAJA awards).

      Furthermore, thirteen of the Plaintiffs are IHEs without significant financial constraints

whose "participation poses a special problem in this case." *Louisiana*, 853 F.2d at 1223. In

*Louisiana*, the Fifth Circuit found that "participation of a party ineligible for EAJA fees may

make a fee award for other eligible parties unjust" and when "parties eligible for EAJA fees join

parties ineligible for EAJA fees, the district court must account for the free-rider problems that

will inevitably exist." *Id.* at 1225. In reaching this conclusion, the Fifth Circuit analyzed *Sierra*

*Club v. U.S. Army Corps of Engineers*, 776 F.2d 383 (2d Cir. 1985), in which the Second Circuit

considered whether courts should attribute one plaintiff's ineligibility under the EAJA to all

plaintiffs. The *Sierra Club* majority directed the district court to "determine the number of

eligible plaintiffs and award fees based on the ration of eligible plaintiffs to total plaintiffs." 776

F.2d at 393. However, the concurrence in *Sierra Club* observed that "[t]he EAJA was passed for

a specific purpose; to ensure that parties would not be prevented from contesting government action simply because they could not afford to litigate the matter. When a group of twelve plaintiffs, one of whom has a net worth of over $1 million, join together, congressional concern about access to the courts is not implicated." 776 F.2d at 394 (Meskill, J. concurring). "Indeed, it seems incongruous to hold that if the ineligible plaintiff alone challenged [], fees could not be awarded under the EAJA, but because the ineligible plaintiff was joined by less wealthy friends, fees may be awarded." *Id.*

In short, this litigation does not implicate "disparity between the resources and expertise" of the parties. AAU represents some of the most prestigious entities, which have substantial endowments, in the United States and boasts that its "member universities earn billions of dollars in competitively awarded federal funding." Doc No. 40-1 at ¶ 3. In 2024, AAU's member universities paid $127.5 billion in salaries to 912,626 employees.[7] Thirteen of these member universities participated as named Plaintiffs, meaning that most Plaintiffs are leading IHEs that earn hundreds of millions in federal funding alone. Additionally, AAU has 71 members, and only 13 joined this case as named Plaintiffs. Nevertheless, AAU litigated on behalf of all of its member IHEs, who are all fully capable of accessing the courts. Beyond the 13 named Plaintiff IHEs, 25 other IHEs submitted declarations in support of preliminary injunction and summary judgment. *See e.g.* Doc. Nos. 40-15, 40-35, 40-41 (declarations from Dartmouth College, Tufts University, and Yale University, respectively). The endowments of these institutions amount to

---

[7] https://www.aau.edu/americas-leading-research-universities-numbers (last visited Dec. 12, 2025).

billions of dollars.[8]  Awarding EAJA fees here would be incongruous with the EAJA's statutory

purpose.

## II.    AAU's Fees Should Be Reduced

Even if EAJA fees are awarded, the fees requested by AAU should be reduced.  As a

preliminary matter, despite being only one of sixteen plaintiffs, AAU has merely alleged, and not

shown, that "it is the entity responsible for paying the legal fees and costs in this matter."  Doc.

No. 92 at 9.  Neither the declarations nor other evidence submitted with AAU's motion offer

evidence of its fee arrangement with other Plaintiffs.  *See generally* Harrison Decl., Doc. No. 90-

2; Clement Decl., Doc. No. 90-4.  AAU needs to meet its burden of proving eligibility for the

full fee award it claims by submitting evidence of its sole responsibility for the legal costs and

fees in this matter at the time the litigation commenced.  *See Unification Church v. I.N.S.*, 762

F.2d 1077, 1082 (D.C. Cir. 1985) (stating that courts need to consider which parties would be

liable for fees if court-awarded fees are denied); *see also* 28 U.S.C. § 2412(d)(1)(B) (party

seeking EAJA fees must submit an application "which shows that the party is . . . eligible to

receive an award").  If AAU fails to submit such evidence, the Court should reduce any fee

award to AAU to one-sixteenth of the total appropriate fee to apportion the fees among all

plaintiffs.

Additionally, AAU's request for $330,453.56 in attorney fees should be reduced as

patently unreasonable for three reasons.  First, enhanced EAJA fees are not appropriate in

Administrative Procedure Act cases.  The Court should therefore deny AAU's request for an

---

[8] https://www.thedartmouth.com/article/2025/11/dartmouth-endowment-s-2025-return-not-
strong-enough-to-beat-other-ivies (last visited Dec. 12, 2025) (listing Dartmouth and Yale's
endowments at $9 billion and $44.1 billion, respectively); https://investments.tufts.edu/about-us
(last visited Dec. 12, 2025) (listing Tufts University's endowment at $2.6 billion).

elevated rate of $500 per hour for certain attorneys. Next, AAU fails to carry its burden to justify many of its requested hours, both by improperly "block billing" and by otherwise providing time accounting entries that are so vague as to defy effective judicial review. Finally, AAU requests an inflated number of hours for reimbursement based on their apparent overstaffing of the case. AAU seeks reimbursement for 24 attorneys and 8 paralegals for a relatively straightforward issue of administrative law. Taken together, these issues justify a substantial decrease in the number of hours allowed by the Court.

   A.  <u>AAU has not shown it is entitled to an increased hourly fee.</u>

   The EAJA establishes a statutory cap of $125 for attorney fees. 28 U.S.C. § 2412(d)(2)(A)(ii). "The statutory cap is, broadly speaking, designed to hold down the government's costs by providing modest compensation, with exceptions." *Atlantic Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 491 (1st Cir. 2000). This cap reflects the dual purposes of the EAJA: "ensuring representation for those who need it and *minimizing the cost of such representation to the taxpayers*." *Williams v. Barnhart*, 206 Fed. App'x 378, 379 (5th Cir. 2006) (emphasis added). As such, exceeding the statutory cap may be appropriate where "some distinctive knowledge or specialized skill [is] needful for the litigation in question," *Atlantic Fish Spotters Ass'n*, 205 F.3d at 491–92 (quoting *Pierce*, 487 U.S. at 572) (alteration in original), and "it is necessary to pay more than $125 to obtain attorneys with that skill or knowledge." *Id.*[9]

   The First Circuit has already spoken on the impropriety of enhanced EAJA fees in Administrative Procedure Act cases. "Modern administrative law involves, in practically every

---

[9] Exceeding the cap may also be permissible when the court determines that an increase in the cost of living justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A)(ii). Adjusted for cost of living, the statutory cap is $265.89. Doc. No. 92 at 14. The United States does not oppose reimbursement at an hourly rate of $265.89.

14

area, a tangle of discrete regulations, various precedents, a bureaucratic vocabulary and some background knowledge about the kinds of events commonly involved . . .". *Atlantic Fish Spotters Ass'n*, 205 F.3d at 492. As such, "[i]t is almost always helpful for counsel to have had prior experience in the area, usually the more the better. But in most cases an otherwise competent lawyer can—albeit at the cost of some extra time—learn enough about the particular controversy to litigate in the area adequately . . .". *Id.* at 492; *see also Lewis v. Sec'y of Health & Human Servs.*, 370 F. Supp. 3d 267, 273 (D. Mass. 2019). AAU offers nothing beyond the type of knowledge of regulatory regimes that all attorneys are trained to cultivate with time. Doc. No. 91 at 15. But "[t]o assess the Secretary's justifications and seek to puncture them by reasoning and publicly available data is to deploy exactly the skills taught in law school." *Atlantic Fish Spotters Ass'n*, 205 F.3d at 492. Mere knowledge of a regulatory scheme is insufficient to justify an enhanced rate.

Resisting this conclusion, AAU's attorneys couple this claimed "experience and expertise" with the need to move quickly lest their clients suffer irreparable harm. Doc. No. 91 at 15. If regulatory knowledge coupled with the threat of irreparable harm were sufficient to justify an upwards rate increase, then *the majority* of meritorious APA cases would qualify for an upward adjustment. Plaintiffs bringing APA cases against the United States invariably move for preliminary injunctions by raising the specter of irreparable harm. Because the Supreme Court has already decried an interpretation of the EAJA's upward adjustment language that would "effectively eliminate [the EAJA's rate cap]," *Pierce*, 487 U.S. at 571, AAU's argument sweeps too broadly. As such, all attorneys should receive the statutory cap rate, adjusted for inflation, of $265.89.

B. <u>The number of hours should be reduced.</u>

In any event, even if the Court is inclined to award EAJA fees to AAU generally, the Court should closely examine the time entries submitted by AAU. "The plaintiffs bear the burden of establishing the reasonableness of the rates and hours submitted in their application for fees." *Mason v. Me. Dep't of Corr.*, 387 F. Supp. 2d 57, 60 (D. Me. 2005). While reviewing an EAJA request, "[d]istrict courts have broad discretion in determining reasonable fees." *Sinclair v. Berryhill*, 284 F. Supp. 3d 111, 116 (D. Mass. 2018). Here, many of the time entries are block billed. Others are vague. And the repetition of certain entries suggests potential overstaffing inefficiencies that should not be compensated by an EAJA award.

1. *Plaintiffs' Attorneys Block-Billed Their Hours*

Many of the billing entries submitted by AAU's attorneys lack specificity and do not permit the Court to evaluate the propriety of EAJA reimbursement. Where "time records [ ] are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues. [ ] In such a circumstance, the court may adjust those entries to achieve an equitable result." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008). One such form of poor timekeeping is "block billing" which is the "time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Torres-Rivera v. Espada-Cruz*, Civ. No. 99-1272, 2007 WL 906176 ,at *2 (D.P.R. Mar. 22, 2007) *aff'd* 524 F.3d 331, 340 (1st Cir. 2008). In such circumstances, "district courts have broad discretion in reducing fee requests" and the "First Circuit has endorsed across-the-board global fee reductions as an appropriate remedy for block billing practices." *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 355 (D. Mass. 2013). These across-the-board reductions of "fifteen to twenty percent have been fairly common penalties for block billing in this circuit." *Id.* Here, the attorneys blocked billed

16

238.05 hours, and the paralegals block-billed 24.2 hours.  Ex. A, Doc. No. 98-1.  This "prominently feature[d] evidence of block billing" justifies an across-the-board reduction of 15 percent. This reduction would remove 131.685 hours attorney hours and 13.425 paralegal hours.[10]

    2.  *Many of the Entries are Vague*

    While many of the other entries are not necessarily "block billed," they nevertheless are drafted so vaguely as to defy effective judicial review.  Such entries "lump together multiple distinct activities," *New Hampshire Hosp. Assoc. v. Azar*, Civ. No. 15-cv-460-LM, 2019 WL 1406631, at *14 (D.N.H. Mar. 28, 2019), such that they do not "allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent."  *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) (alteration in original) (quoting *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986)).  Where this is the case, a reduction of 50 percent is warranted.  *Id.* at 944.  Here, the sheer number of attorneys assigned to this case led to duplicative communications and conferences between those attorneys, *see infra* at 18–19, but the entries provided by Plaintiffs' attorneys defy effective review by grouping together substantive work and communications.  Ex. D, Doc. No. 98-4.

    Other entries describe the work conducted at such a high level of generality so as to render them difficult to assess.  *See New Jersey v. EPA*, 703 F.3d 110, 115 (D.C. Cir. 2012) (deeming entries like "draft reply brief" and "continue draft of mercury brief" inadequate when used to describe many hours); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970–71 (D.C. Cir. 2004) (deeming "identical one-line entry" of "research and writing for appellate brief"

---

[10] As is common practice in the First Circuit, the global reduction applies *after* all other reductions are applied.  *See AutoZone*, 934 F. Supp. 2d at 355.

insufficient to adequately describe time). Here, AAU's request contains numerous vaguely described entries such as "[e]dited complaint" and "[r]esearched issues for PI/summary judgment brief." Ex. D, Doc. No. 98-4. In sum, these vaguely described entries account for 203.65 hours of attorney time and 4.75 hours of paralegal time. These entries should be discounted by 50 percent. *See New Jersey*, 703 F.3d at 115 (finding that vague description coupled with other overbilling practices justified hour reduction of 75 percent). This reduction would reduce the hour totals by 101.825 attorney hours and 2.375 paralegal hours.

   3. *Plaintiffs' Team of Attorneys Was Unnecessarily Large*

   AAU also unreasonably seeks reimbursement for large number of attorneys the Plaintiffs retained to litigate this case. A "trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." *Cano v. Saul*, 505 F. Supp. 3d 20, 30 (D. Mass. 2020) (quoting *AutoZone*, 934 F. Supp. 2d at 350). This skepticism flows from the judicial recognition "that at some point, allocating portions of a task among group members ceases to raise productivity and instead begins to hinder it." *Miller v. Holzmann*, 575 F. Supp. 2d 2, 44 (D.D.C. 2008); *Wild Fish Conservancy v. Thom*, No. C20-417, 2025 WL 3259740, at *7 (W.D. Wash. May 19, 2025) (noting that "[w]hile internal strategy meetings can enhance efficiency, an overabundance of redundant or unnecessary conferences diminishes productivity."). Indeed, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001). Here, Plaintiffs' law firms assigned twenty-four lawyers and eight paralegals to this case. Doc. No. 90-1 at 2. As an apparent result of this overstaffing, the time

spent on correspondence was 122.85 hours.  Ex. B, Doc. No. 98-2.[11]  These hours should receive a 25 percent reduction.  Similarly, this apparent overstaffing led to Plaintiffs' counsel spending 114.85 hours preparing for a single oral argument.  Ex. C, Doc. No. 98-3.  These hours should also be discounted by 25 percent.  In total, these reductions would reduce the attorney hours billed by 59.425 hours.

* * *

In sum, AAU seeks reimbursement for 877.9 hours of attorney time and 89.5 hours of paralegal time.  Even if the Court determines that AAU is entitled to fees under the EAJA, the Court should reduce these hours by 269.4 attorney hours and 8.675 paralegal hours, to a total of 608.50 attorney hours and 62.65 paralegal hours.  At rates of $265.89 per attorney hour, and $95 per paralegal hour, the proper award is $167,745.82.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny AAU's motion for attorneys fees under EAJA in full, or, alternatively, award a reduced amount of $167,745.82.

---

[11] Certain time entries submitted by Plaintiffs' attorneys are subject to reduction for multiple reasons; such entries are highlighted in the exhibits.

Dated: December 12, 2025                BRETT A. SHUMATE
                                        Assistant Attorney General

                                        LEAH B. FOLEY
                                        United States Attorney

                                        BRIAN C. LEA
                                        Deputy Associate Attorney General

                                        BRENNA E. JENNY
                                        Deputy Assistant Attorney General

                                        KIRK T. MANHARDT
                                        Director

                                        MARC S. SACKS
                                        Deputy Director

                                         /s/ *Bethany R. Theriot*
                                        BETHANY R. THERIOT (D.C. Bar 1022065)
                                        I-HENG HSU (NY Reg. No. 4904033)
                                        Trial Attorneys
                                        U.S. Department of Justice, Civil Division
                                        Corporate/Financial Litigation Section
                                        P.O. Box 875
                                        Ben Franklin Station
                                        Washington D.C. 20044-0875
                                        Tel: (202) 307-0244
                                        bethany.theriot@usdoj.gov
                                        i-heng-hsu@usdoj.gov

                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 12, 2025                        /s/ *Bethany R. Theriot*
                                                BETHANY R. THERIOT
                                                Trial Attorney