IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL SCIENCE FOUNDATION, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-11231 <br><br> Leave to File Granted on December 16, 2025 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ......................................................................................................................1

I.    Plaintiff's requested fee award is warranted. ............................................................1

        A.    Defendants' position was not substantially justified. ..................................1

        B.    Special circumstances do not make granting this award unjust. ................5

II.    The fee award should not be reduced. .....................................................................8

        A.    Select AAU attorneys should receive enhanced fees. ..................................8

        B.    The number of hours billed was reasonable. ..............................................9

                1.    Allegedly block-billed time entries should not be reduced. ..........9

                2.    The identified time entries are not vague. ....................................10

                3.    The attorney team was the right size. ...........................................11

                4.    Defendants identified no authority in support of reducing hours spent on correspondence or oral argument. ................................12

CONCLUSION ..................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE**

*AAU v. DOD*, 792 F. Supp. 3d 143 (D. Mass. 2025) ................................................................ 3, 4

*AAU v. DOD*, No. 25-cv-11740, 2025 WL 2899765 (D. Mass. Oct. 10, 2025),
    *appeal docketed*, No. 25-2184 (1st Cir. Dec. 16, 2025) .......................................................... 1, 4

*AAU v. DOE*, 789 F. Supp. 3d 118 (D. Mass. 2025), *judgment entered*, No. 25-cv-
    10912 (D. Mass. June 30, 2025), *appeal docketed*, No. 25-1727 (1st Cir. July
    31, 2025) ............................................................................................................................ 1, 3, 4

*AAU v. DOE*, No. 25-cv-10912, 2025 WL 1119791 (D. Mass. Apr. 16, 2025) ............................. 2

*AAU v. NSF*, 788 F. Supp. 3d 106 (D. Mass. 2025) ................................................................ 1, 4, 8

*Atlantic Fish Spotters Ass'n v. Daley*, 205 F.3d 488 (1st Cir. 2000) ....................................... 7, 8, 9

*Blackman v. District of Columbia*, 677 F. Supp. 2d 169 (D.D.C. 2010), *aff'd*, 633
    F.3d 1088 (D.C. Cir. 2011) .................................................................................................. 10, 11

*Dantran, Inc. v. United States Department of Labor*, 246 F.3d 36 (1st Cir. 2001) ....................... 3

*Dowdell v. Imhof*, No. 10-cv-1332, 2012 WL 959474 (E.D.N.Y. Mar. 19, 2012) ................. 10, 11

*EEOC v. AutoZone, Inc.*, 934 F. Supp. 2d 342 (D. Mass. 2013) .................................................... 9

*Louisiana ex rel. Guste v. Lee*, 853 F.2d 1219 (5th Cir. 1988) ...................................................... 7

*Massachusetts v. NIH*, 770 F. Supp. 3d 277 (D. Mass. 2025), *judgment entered*,
    No. 25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025), *appeal
    docketed*, No. 25-1344 (1st Cir. Apr. 9, 2025) ........................................................................ 1, 2

*Michel v. Mayorkas*, 68 F.4th 74 (1st Cir. 2023) ........................................................................... 3

*National Ass'n of Manufacturers v. Department of Labor*, 159 F.3d 597 (D.C. Cir.
    1998) ............................................................................................................................................ 7

*Penobscot Nation v. Frey*, 3 F.4th 484 (1st Cir. 2021) .................................................................. 6

*PQ Labs, Inc. v. Qi*, No. 12-0450, 2015 WL 224970 (N.D. Cal. Jan. 16, 2015) ......................... 10

*Republic of Hungary v. Simon*, 604 U.S. 115 (2025) ................................................................. 5, 6

*Sierra Club v. United States Army Corps of Engineers*, 776 F.2d 383 (2d Cir.
    1985) ............................................................................................................................................ 6

*Tang v. Chertoff*, 689 F. Supp. 2d 206 (D. Mass. 2010) ................................................................ 1

*Texas Food Industry Ass'n v. United States Department of Agriculture*, 81 F.3d 578 (5th Cir. 1996) ................................................................................................................. 7

*Unification Church v. INS*, 762 F.2d 1077 (D.C. Cir. 1985) ..................................................... 6, 7

*Washington Department of Wildlife v. Stubblefield*, 739 F. Supp. 1428 (W.D. Wash. 1989) ........................................................................................................................... 7

*WB Music Corp. v. Royce International Broadcasting Corp.*, No. EDCV16600, 2020 WL 8174627 (C.D. Cal. Nov. 20, 2020) ................................................................. 9, 10

**STATUTES**

28 U.S.C. § 2412(d)(2)(B) ................................................................................................................ 6

41 U.S.C. § 4708 ............................................................................................................................. 4

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 226, 132 Stat. 348, 740 ................................................................................................................................. 5

**OTHER AUTHORITIES**

2 C.F.R. § 200.414(c) ..................................................................................................................... 4

NSF, NSF 25-034, *Policy Notice: Implementation of Standard 15% Indirect Cost Rate* (May 2, 2025), https://www.nsf.gov/policies/document/indirect-cost-rate ................. 8, 11

Office of Management & Budget, *A Budget for a Better America: Major Savings and Reforms* (2019), https://www.govinfo.gov/content/pkg/BUDGET-2020-MSV/pdf/BUDGET-2020-MSV.pdf ........................................................................................ 5

Plaintiff Association of American Universities ("AAU") has brought suit challenging four materially identical policies issued by the National Institutes of Health ("NIH"), Department of Energy ("DOE"), National Science Foundation ("NSF"), and Department of Defense ("DOD") that sought to cap indirect costs on research grants awarded to universities. These policies, like dominoes falling one after the other, have all been struck down by courts in this District. *See Massachusetts v. NIH*, 770 F. Supp. 3d 277, 327–30 (D. Mass. 2025), *judgment entered*, No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025), *appeal docketed*, No. 25-1343 (1st Cir. Apr. 9, 2025); *AAU v. DOE*, 789 F. Supp. 3d 118, 152–53 (D. Mass. 2025), *judgment entered*, No. 25-cv-10912 (D. Mass. June 30, 2025), *appeal docketed*, No. 25-1727 (1st Cir. July 31, 2025); *AAU v. NSF*, 788 F. Supp. 3d 106, 142–44 (D. Mass. 2025); *AAU v. DOD*, No. CV 25-11740, 2025 WL 2899765, at *27–31 (D. Mass. Oct. 10, 2025), *appeal docketed*, No. 25-2184 (1st Cir. Dec. 16, 2025). AAU now seeks to recover the fees and costs available to it under the Equal Access to Justice Act ("EAJA") that it incurred in bringing this challenge to the NSF Rate Cap Policy. Defendants' arguments for refusing or reducing the amount of a fee award are unpersuasive.

## ARGUMENT

### I. Plaintiff's requested fee award is warranted.

Defendants have not met their burden to demonstrate that their position was substantially justified, nor that special circumstances justify the denial of fees here. *See Tang v. Chertoff*, 689 F. Supp. 2d 206, 214–17 (D. Mass. 2010).

#### A. Defendants' position was not substantially justified.

AAU in its original motion addressed the many ways this Court found the NSF Rate Cap Policy to be unlawful and will not rehash those arguments here. *See* Pl.'s Mem. of Law in Supp.

1

of Its Mot. for Att'ys' Fees and Costs Pursuant to the Equal Access to Justice Act, Doc. No. 92 at 5–8. Defendants in their opposition attempt to make hay of the Court declining to decide an issue or choosing not to grant every form of relief as evidence of the reasonableness of Defendants' position. *See* Defs.' Opp'n to AAU's Mot. for Att'ys' Fees and Costs Pursuant to the Equal Access to Justice Act ("Opposition"), Doc. No. 98 at 5–7. While this may show reasonable restraint on behalf of *this Court*, Defendants' loss on almost every issue does not suggest that Defendants' overall position was reasonable.

Defendants appear to ask this Court to ignore relevant background and history and myopically focus on only the NSF Rate Cap Policy. But the government's multiple attempts to cut indirect costs, both in recent months and during the first Trump Administration, are the background against which the NSF Rate Cap Policy was enacted, and the background against which the Court must assess whether Defendants' position was substantially justified. Based on this background, prior congressional and executive actions, and this Court's findings and holdings in the case at hand, neither the issuance nor the positions taken in defense of the NSF Rate Cap Policy were substantially justified.

As this Court is well aware, the legality of indirect cost policies was not an issue of first impression in this District. At the time Defendants enacted the NSF Rate Cap Policy, courts in this District had already vacated and enjoined the NIH Rate Cap Policy—including entering a final judgment on the government's own motion—and restrained DOE from enforcing its Rate Cap Policy. *See NIH*, 770 F. Supp. 3d at 327–30, *judgment entered,* No. 1:25-CV-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025); *AAU v. DOE*, No. 25-cv-10912, 2025 WL 1119791, at *1 (D. Mass. Apr. 16, 2025). In the wake of this early string of losses, Defendants had an opportunity to change the NSF Rate Cap Policy to at least attempt to make it lawful prior to

2

issuance, or even wait and see how the litigation against the NIH and DOE policies turned out. Defendants took neither opportunity. Instead, they issued a policy that was materially similar to those that courts in this District had already enjoined or restrained. Worse, as indicated by the lack of an administrative record, *see* Defs.' Opp'n to Pls.' Mot. to Expedite Prelim. Inj. Briefing Schedule, Doc. No. 47 at 3, it appears Defendants did not even *consider* those adverse decisions before enacting the NSF policy.

That it was district courts and not the First Circuit that had previously addressed the lawfulness of these policies is insignificant. *See* Opposition, Doc. No. 98 at 4. The First Circuit is not required to first find a government action unlawful for a court to award fees under the EAJA. Indeed, if that were the rule, the government could continuously issue unlawful policies but protect itself from paying fees by choosing not to appeal. Defendants' constrained reading of *Michel v. Mayorkas*, 68 F.4th 74 (1st Cir. 2023) ignores that the *Michel* court reached its holding because: the issue was "novel *and* of first impression within the First Circuit"; "not a single case in the country had been issued favoring [plaintiffs'] arguments"; *and* "the only district court within the First Circuit to address the key issue [in the case] agreed that the government's position on the merits [wa]s correct." *Id.* at 79 (emphasis added). None of these factors are present here.

Moreover, even if a position is substantially justified at the start of litigation, it can become unjustified as the case moves on. *See Dantran, Inc. v. U.S. Dep't of Labor*, 246 F.3d 36, 41, 44 (1st Cir. 2001). During the course of the NSF litigation, courts in this District issued still more decisions finding Rate Cap Policies unlawful. *DOE*, 789 F. Supp. 3d at 137–48, 152–53 (holding the DOE Rate Cap Policy is likely unlawful and granting a preliminary injunction that was later converted to a final judgement on the government's own motion); *AAU v. DOD*, 792 F.

3

Supp. 3d 143, 164–76, 184 (D. Mass. 2025) (holding the DOD Rate Cap Policy is likely unlawful and granting a preliminary injunction). While Defendants' position was not substantially justified at the outset, it became even less reasonable as other courts in this District held that nearly identical policies were likely to be unlawful.

Even if NSF had been the first agency to issue a rate cap policy this year, Defendants' position would not have been substantially justified. Congress and the executive branch over time have restricted agencies' authority to limit indirect costs. Defendants' history from the 1950s and 1960s is certainly a relevant starting point, *see* Opposition, Doc No. 98 at 5, but stopping there leaves out everything that has happened since, and thus bears little relationship to what is legally permissible today.

Past congressional and executive actions have made clear that agencies cannot set rate caps like the one here. Indirect costs are governed by 41 U.S.C. § 4708, which permits agencies "to pay a grantee its 'reimbursable indirect costs' using a particular methodology (namely, a predetermined rate)" and does not give agencies the authority to refuse to pay "'reimbursable indirect costs.'" *NSF*, 788 F. Supp. 3d at 129. The executive branch has also codified, in 2 C.F.R. § 200.414(c) and the Uniform Guidance, regulations for computing indirect cost rates for institutes of higher education ("IHEs"), which—as this Court and others in this District have found—further restrict agencies' authority to enact rate caps. *NSF*, 788 F. Supp. 3d at 131–34; *DOE*, 789 F. Supp. 3d at 143–47; *DOD*, 2025 WL 2899765, at *8–12.

If losses in the *NIH* and *DOE* cases were not enough, these limitations on agencies, including NSF, should have been clear from Congress's response to the first Trump Administration's attempt to limit indirect costs. In 2017, when the Administration proposed capping indirect costs on NIH grants at 10%, Congress passed an appropriations rider prohibiting

4

any cap and requiring NIH to follow the institution-specific approach to setting indirect cost rates set forth in the governing regulations—which are materially identical to the regulations that apply to NSF. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 226, 132 Stat. 348, 740. In other words, not only did Congress act swiftly to correct the executive when that branch proposed a radical change to the governing framework, it also understood that the regulations prohibit rate caps. While the rider applies to NIH, it shows that Plaintiffs' interpretation of the governing regulations is both longstanding and correct (and Defendants' interpretation is both recent and incorrect). The first Trump Administration acknowledged as much: In 2019, the Administration agreed that, through the rider, Congress had prohibited NIH "by law from reducing grantee administrative costs and shifting these resources to support direct research." Off. of Mgmt. & Budget, *A Budget for a Better America: Major Savings and Reforms* 43 (2019), https://www.govinfo.gov/content/pkg/BUDGET-2020-MSV/pdf/BUDGET-2020-MSV.pdf.

The Court relied in part on this history when it granted victory to Plaintiffs in this case—it should decline Defendants' request to ignore it now. Defendants' position was not substantially justified.

### B. Special circumstances do not make granting this award unjust.

Defendants' arguments that special circumstances make granting a fee award unjust are no more availing than their arguments that their position was substantially justified.

Defendants hang their hat on an extra-textual, purposivist reading of the EAJA to argue that AAU, despite meeting the statutory criteria, should nevertheless be ineligible to receive EAJA fees. *See* Opposition, Doc. No. 98 at 9–13. Their interpretation of the legislative history is impossible to square with the best indicator of Congress's intent: the text of the statute. *Cf.*

*Republic of Hungary v. Simon*, 604 U.S. 115, 137 (2025).  Congress in the EAJA set parameters on which entities are eligible to receive fees.  Per the statute, a prevailing 501(c)(3) organization, "regardless of the net worth of such organization," is eligible to recoup fees, so long as that organization does not have "more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).  AAU meets the statutory requirements to receive fees under the EAJA.  *See* Declaration of Barbara Snyder, Doc No. 101-1 at ¶ 2.  Indeed, Defendants do not dispute that AAU meets the statutory eligibility requirements.  Because the text of the EAJA is unambiguous, Defendants' attempts to rely on legislative history to rewrite the statute with additional restrictions are unnecessary (not to mention unpersuasive).  *See Penobscot Nation v. Frey*, 3 F.4th 484, 491 (1st Cir. 2021) ("When the text is unambiguous and the statutory scheme is coherent and consistent, we do not look to legislative history or Congressional intent.").

Defendants' argument that the Court should not award fees because AAU was joined in this litigation by other plaintiffs ignores factual realities and cherry-picks from case law.  AAU was responsible for the attorneys' fees in this matter, and as a statutorily eligible entity, *see* Snyder Decl., Doc. No. 101-1 at ¶¶ 2–3, is thus permitted to recover such fees under the EAJA.  Defendants cite two out-of-circuit cases, *see* Opposition, Doc. No. 98 at 11–12, but neither adopted the position advocated by Defendants here: that an otherwise-eligible entity should be excluded from recovering fees based on the mere presence of other plaintiffs.  *See Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 393–94 (2d Cir. 1985) (rejecting this position).[1]  In fact, courts generally find the opposite.  *See, e.g.*, *Unification Church v. INS*, 762 F.2d 1077,

---

[1] In the parts of the *Sierra Club* opinion quoted by Defendants, the author of the majority opinion makes clear he is speaking only for himself.  776 F.2d at 394 ("I dissent from the majority's construction of the EAJA. . . .").  The two other members of the panel did not agree with the author's position.  *Id.* at 393–94.

6

1082 (D.C. Cir. 1985) (where some plaintiffs are liable for attorney's fees and not others, finding that courts should only consider the eligibility of liable parties); *Wash. Dep't of Wildlife v. Stubblefield*, 739 F. Supp. 1428, 1432 (W.D. Wash. 1989) (finding "no special circumstances make an award of fees to Audubon unjust, despite the participation of Wildlife (an ineligible co-plaintiff) with Audubon in the lawsuit"). To the extent *Louisiana ex rel. Guste v. Lee*, 853 F.2d 1219 (5th Cir. 1988), can be read to suggest exclusion might be appropriate in some cases, it is not relevant here—AAU was the party responsible for fees, and participation by the other Plaintiffs was comparatively narrow, amounting largely to submitting declarations. *Id.* at 1225 ("[I]f the ineligible party's participation is nominal or narrow, then the eligible parties should not be denied the access that Congress sought to ensure by enacting the EAJA.").

And Defendants' suggestion that the Court look not at AAU's eligibility, but at its members', is, again, contrary to the text of the statute and has been rejected by other courts. *See Tex. Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 582 (5th Cir. 1996) (holding associations are eligible for EAJA fees "on the basis of each association's independent qualifications—not the qualifications of its constituent members"); *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 603–04 (D.C. Cir. 1998) (courts should "pierce the associational veil" only when an association is participating in litigation as "no more than a 'front' or a 'sham' through which ineligible entities pursued litigation and recovered fees"); *see also Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 489, 493 (1st Cir. 2000) (permitting award of attorneys' fees for trade association). Defendants, correctly, do not suggest that AAU is a "sham" entity, and thus, there is no reason to go beyond the EAJA's clear eligibility requirements.

This Court should decline to add the government's extra-textual glosses on the EAJA and apply the statute as written.

## II.    The fee award should not be reduced.

As noted, AAU was responsible for the legal fees and costs in this matter, *see* Snyder Decl., Doc. No. 101-1 at ¶ 3, and is thus eligible to receive the full fee amount under the EAJA, as set forth in its opening brief.

### A.  Select AAU attorneys should receive enhanced fees.

Enhanced fees for select attorneys are reasonable in this case because of their expertise honed through prior challenges to other recent rate cap policies and the incredibly condensed timeline forced on Plaintiffs by Defendants.  As Defendants point out, the First Circuit has said that enhanced fees are not *typically* available in Administrative Procedure Act ("APA") cases because "in most cases an otherwise competent lawyer can—albeit at the cost of some extra time—learn enough about the particular controversy to litigate in the area adequately." *Atl. Fish Spotters Ass'n*, 205 F.3d at 492.  Fair enough.  But here, time was a key factor in AAU's selection of Jenner & Block and Clement & Murphy to litigate this case.  Defendants announced the NSF Rate Cap Policy on Friday, May 2, 2025, with an effective date of Monday, May 5, 2025.  NSF, NSF 25-034, *Policy Notice: Implementation of Standard 15% Indirect Cost Rate* (May 2, 2025), https://www.nsf.gov/policies/document/indirect-cost-rate ("NSF 25-034").  AAU effectively had one weekend to bring a challenge against an unlawful policy that would cause devastating, irreparable harm to its members.  *See NSF*, 788 F. Supp. 3d at 123–25, 140–42 (acknowledging irreparable harm from policy).  Defendants created conditions under which only a team of attorneys that had previously litigated challenges to earlier rate cap policies could bring a well-briefed suit under these intense time constraints.  There was no "extra time"—as there would be in most APA cases—for attorneys unfamiliar with the subject matter to "learn enough

8

about the particular controversy to litigate in the area adequately." *Atl. Fish Spotters Ass'n*, 205 F.3d at 492.

Further underscoring the reasonableness of AAU's request, AAU both restricted the number of attorneys for which it requested enhanced rates and asked for a reasonable enhanced rate. AAU requested such fees only for partners who had previously litigated against indirect rate cap policies and thus developed expertise in this area. *See* Declaration of Lindsay C. Harrison Ex. 2, Doc. No. 90-2 at ¶ 4; Declaration of Paul D. Clement Ex. 4, Doc. No. 90-4 at ¶ 5. And the enhanced rate requested for these attorneys is considerably lower than the actual rate that AAU paid for their services. *See* Jenner & Block Time Entries Ex. 3, Doc. No. 90-3; Clement & Murphy Time Entries Ex. 5, Doc. No. 90-5.

### B. The number of hours billed was reasonable.

The number of hours billed was reasonable, especially in light of Defendants' chosen timeline for issuing the NSF Rate Cap Policy, and the time entries are sufficiently detailed for the Court to grant the full requested fee award.

#### 1. Allegedly block-billed time entries should not be reduced.

The Court should deny Defendants' request to reduce the fee award for block billing. "'Block billing' is an industry term used to describe 'the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *EEOC v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 354 (D. Mass. 2013) (quoting *Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 253 (D. Mass. 2011)). Block-billing is "generally disfavor[ed]," but not impermissible, and district courts have "broad discretion" to determine whether a fee reduction for block billing is warranted. *Id.* at 355. Courts have declined to reduce fees when entries do not account for a significant portion of

9

the time billed or the periods of time are short. *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. EDCV16600, 2020 WL 8174627, at *3 (C.D. Cal. Nov. 20, 2020). Courts have also declined to reduce a fee award for block billing when there is "sufficient detail to identify precisely the task accomplished." *PQ Labs, Inc. v. Qi*, No. 12-0450, 2015 WL 224970, at *3 (N.D. Cal. Jan. 16, 2015).

The Court should decline to reduce the fee award for the supposedly block-billed entries Defendants have identified in their Exhibit A. These entries are sufficiently detailed and, in any event, do not account for a significant portion of the time billed. For example, Defendants identified a 2.2-hour entry "Conducted research for reply, corresponded with Jenner team regarding same, and revised draft reply" as an example of block billing, Ex. A to Opposition, Doc. No. 98-1 at 3, but this low-hour entry provides sufficient detail to identify the task accomplished. Similarly, Defendants identified the entry "Drafted portions of reply brief; corresponded with Jenner team re reply brief strategy and legal research; analyzed case law to inform legal argument in reply brief" as an example of block billing that warrants a fee reduction, *id.*, but this entry—listing closely connected tasks associated with drafting the reply brief—and those like it are sufficiently detailed for the Court to determine that the entries are reasonable.

**2. The identified time entries are not vague.**

The Court should also deny Defendants' request to reduce attorneys' fees for "vague" entries. Opposition, Doc. No. 98 at 17–18. Courts have found time entries are not vague when the entries, "reviewed by an individual with knowledge of the case, and in light of the surrounding entries, . . . provide sufficient information to determine what work was performed and why it was relevant to the case." *Blackman v. District of Columbia*, 677 F. Supp. 2d 169,

180 (D.D.C. 2010), *aff'd*, 633 F.3d 1088 (D.C. Cir. 2011); *Dowdell v. Imhof*, No. 10-cv-1332, 2012 WL 959474, at *4 (E.D.N.Y. Mar. 19, 2012) ("The examples cited by defendant, such as '[r]eply to email re: strategy' and 'work with LR re monitoring docs' are sufficient to explain the nature of the work performed." (citation omitted)).

Defendants improperly identified many time entries as vague. For example, Defendants identified the entry "Reviewed NSF filing re voluntary stay and emailed with team re implications" as vague, Ex. D to Opposition, Doc. No. 98-4 at 3, but this time entry allows the Court to determine what work was done—reviewing Defendants' notice that they voluntarily stayed implementation of the NSF Rate Cap Policy and strategizing with the litigation team about next steps; and why it is relevant to the case—attorneys must be able to discuss case developments and how it will affect their strategy moving forward. As another example of Defendants' heavy hand, Defendants identified the 0.3-hour time entry "Conferred with H. Ledwell regarding revisions to brief and conducted additional research" as vague, *id.* at 2, but it is clear from the context and timing of the entry that the attorneys were conferring about a revision to the Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction and Expedited Summary Judgment, Doc. No. 41. In sum, the entries that Defendants identified as vague are not, and the Court should deny Defendants' request to reduce the amount of attorneys' fees for those entries.

### 3. The attorney team was the right size.

Defendants also take umbrage with the size of Plaintiffs' litigation team. Defendants brought this on themselves. Plaintiffs needed a large team because Defendants chose to announce the NSF Rate Cap Policy on a Friday to go into effect the following Monday. NSF 25-034. Speed was of the essence to protect Plaintiffs and their members from irreparable harm. The team size did not decrease efficiency: each member was crucial to filing a suit under

11

Defendants' chosen timeline and later successfully litigating the case. Had the government issued the NSF Rate Cap Policy with adequate notice before implementation, perhaps Plaintiffs' counsel could have prepared this lawsuit with fewer attorneys. Additionally, some attorneys and paralegals billed only a small number of hours. *See* Consolidated Time Chart Ex. 1, Doc. No. 90-1 (showing that four partners billed less than 7 hours and two associates billed less than 2 hours to the case). The absolute number of attorneys is less relevant than the number of hours billed in total, which in this case was reasonable.

4. **Defendants identified no authority in support of reducing hours spent on correspondence or oral argument.**

Defendants also requested a reduction in hours for time spent on correspondence and oral argument. At least some of the identified correspondence, *see* Ex. B to Opposition, Doc. No. 98-2, was between the attorney team and the 41 declarants and was necessary to prepare the declarations filed with the Motion for a Preliminary Injunction and Expedited Summary Judgment, Doc. No. 40; coordinating the preparation of dozens of detailed fact declarations necessarily and unsurprisingly required extensive communications with declarants. Defendants also identified no legal authority supporting a reduction in fees based on time spent on correspondence and did not even attempt to justify why 25% is the proper amount for a reduction in fees.

Defendants also requested a reduction in hours based on time spent preparing for oral argument. Again, Defendants identify no authority in support of reducing fees based on time spent preparing for oral argument or for their requested fee reduction of 25%. Regardless, the time spent was reasonable in light of the potentially hundreds of millions of dollars at stake for Plaintiff universities and members of Plaintiff organizations.

12

## CONCLUSION

AAU's requested fee award is warranted and should not be reduced. AAU respectfully request that this Court grant its motion and award attorneys' fees and costs under the EAJA in the amount of $330,453.56.

Dated: December 30, 2025

JENNER & BLOCK LLP

By: */s/* Lindsay C. Harrison

Lindsay C. Harrison (admitted *pro hac vice*)
Ishan K. Bhabha (admitted *pro hac vice*)
Lauren J. Hartz (admitted *pro hac vice*)
Elizabeth Henthorne (admitted *pro hac vice*)
Anjali Motgi (admitted *pro hac vice*)
Zachary C. Schauf (admitted *pro hac vice*)
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com
IBhabha@jenner.com
LHartz@jenner.com
BHenthorne@jenner.com
AMotgi@jenner.com
ZSchauf@jenner.com

Shoba Pillay, BBO No. 659739
353 N Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com

*Attorneys for All Plaintiffs*

Respectfully submitted,

CLEMENT & MURPHY, PLLC

By: */s/* Paul D. Clement

Paul D. Clement (admitted *pro hac vice*)
James Y. Xi (admitted *pro hac vice*)
Kyle R. Eiswald (admitted *pro hac vice*)
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com
james.xi@clementmurphy.com
kyle.eiswald@clementmurphy.com

*Attorneys for Association of American Universities, Association of Public and Land-grant Universities, and American Council on Education*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of December, 2025, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

/s/ Lindsay C. Harrison
Lindsay C. Harrison (admitted *pro hac vice*)
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com